# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

## Commonwealth *v.* Shields, Appellant (No. 1).

*Criminal law—Embezzlement—Public moneys—Sheriff—Misdemeanor in office—Perjury—Act of March 31, 1876, P. L. 13.*

1. Where a sheriff of a county having over 150,000 inhabitants receives a salary for his services, he cannot retain for his own use costs paid to him for serving writs issued out of the court of common pleas of another county against residents of his own county.

2. If such services are paid for by checks drawn to the order of the sheriff, and are indorsed by the sheriff's deputy by means of a rubber stamp in the name of the sheriff, and deposited in a bank in an account kept in the sheriff's individual name, followed by the word "sheriff" and are duly collected and the proceeds credited to such account, and it also appears that the sheriff did not account for, nor pay over these fees to the county treasurer, or enter them in a special account book which he was required by the Act of March 31, 1876, P. L. 13, he may be convicted of embezzlement and misdemeanor in office; and if he swears to the correctness of his fee account from which such fees were omitted, he may be convicted of perjury.

3. In such a case the sheriff cannot claim exemption because of the failure of his deputy to make the proper entries in the books, or to correctly state the account to which the sheriff swore; nor in such a case can he claim exemption because he was not required by the controller, or other proper officer, by demand made upon him, to pay over the fees in question.

4. A person swearing willfully and deliberately to a thing which he

rashly believes, but has no probable cause for believing, and which is in fact false, may be guilty of perjury.

5. Where the sheriff deposits fees belonging to the county in an account kept in his individual name, followed by the word "sheriff" and deposits his own moneys also in this account, and draws therefrom moneys for his own use, but never accounts to the county for the fees in question, he may be convicted of embezzlement without proof that he had "converted to his own use" or had "used by way of investment in any kind of property or merchandise" all or some portion of the fees, or had "defaulted and failed to pay over the same after being thereunto legally required by the controller or other proper officer authorized to demand and receive the same."

6. While willfulness is an essential element in embezzlement, it is for the jury to determine from all the evidence, whether this essential has been established in any particular case.

.7. Where a public officer is arrested for embezzling public funds, and at his trial two witnesses for the commonwealth testify that at the time of his arrest he said he had the money "and by God he was going to keep it," such evidence is plainly indicative of a willful retention of the money.

*Constitutional law—Title of act—Act of March 31, 1876, P. L. 13.*

8. The Act of March 31, 1876, P. L. 13, entitled, "An Act to carry into effect sec. 5 of art. XIV of the constitution, relative to the salaries of county officers, and the payment of the fees received by them into the state or county treasury, in counties containing over one hundred and fifty thousand inhabitants," is sufficiently indicative of all the provisions enacted in the act, to comply with the constitutional requirement relating to the title of acts of assembly.

*Criminal law—Evidence as to similar offenses—Sheriff—Embezzlement.*

9. On the trial of the indictment of a sheriff for embezzling fees received for serving writs from courts of another county against residents of his own county, it is not improper to permit the commonwealth to prove that the defendant did not enter in a special account book, which the law required him to keep, nor in his monthly transcripts, and did not account for and pay over to the county treasurer, fees received by him for the service of other writs issued out of the courts of other adjoining counties, which were not embraced in any of the counts of the indictment.

10. While the doing of another criminal act not part of the issue is in general not admissible as evidence of the doing of the criminal act charged, yet proof of it may be offered for the specific purpose of evidencing design, plan, motive, identity, intent, or other relevant fact, distinct from moral character.

*Practice, C. P.—Improper remarks of counsel—Withdrawal of juror—*
*Continuance—Stenographic report of counsel's address.*

11. A stenographic report of an address of counsel to the jury not transcribed in longhand by direction of the court, nor included in the report of the proceedings approved by the judge and directed to be filed, nor conceded to be correct, but the correctness of which is expressly denied, cannot be considered in support of an assignment of error to the refusal of the trial judge to withdraw a juror and continue the case because of improper remarks of counsel.

12. There are two recognized methods of bringing remarks of counsel in addressing the jury upon the record so to as make the ruling of the court relating thereto subject to review. One method is to call the court's attention to them at the time, request that they be placed on the notes of trial, and except to the court's ruling upon the motion to withdraw a juror and continue the case, or other similar motion. The other method is to bring the matters complained of before the court by an affidavit in support of their verity. A mere assertion not verified by affidavit that counsel had made certain remarks, is not sufficient.

13. As a general rule the refusal of the court to withdraw a juror and continue a case for alleged improper remarks of counsel, is a matter within the discretion of the trial court, and reviewable only for abuse.

Argued Dec. 11, 1911. Appeal, No. 100, April T., 1912, by defendant, from judgment of O. & T. and Quarter Sessions, Westmoreland Co., May T., 1911, No. 179, on verdict of guilty in case of Commonwealth v. John E. Shields. Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Affirmed except as to sentence.

Indictment for misdemeanor in office, embezzlement and perjury. Before McConnell, J.

The material charge was that the defendant had collected fees for serving writs which had issued from the common pleas of Fayette county against residents of Westmoreland county, and had failed to enter such fees in his books, or pay them over to the treasurer of Westmoreland county.

At the trial the defendant presented the following points:

1. There can be no conviction upon the third, fourth,

fifth, sixth, seventh, eighth, ninth and tenth counts in the indictment (the first and second counts having been withdrawn), being the counts in which the defendant is charged with willfully and unlawfully omitting and neglecting to make entry in the books provided for that purpose, of fees and moneys received and earned for the service of certain writs issued out of the courts of Fayette county, unless the jury first find, beyond a reasonable doubt that the entries in those books were made by the defendant, or that he had guilty knowledge of the alleged omissions or neglect, or that he willfully and negligently employed an incompetent and unfit person to keep the said books and make the said entries. *Answer:* Those three things that are specifically mentioned there, after the word "unless," would constitute instances in which the defendant could be found guilty, but we will not say to you that, in those things alone, there is failure of official duty, in regard to those things that are prescribed in this act of 1876. There is a duty of supervision, and vigilance, and care, and verification, and oversight, which may be so grossly neglected as to become, in itself, active wrongdoing that would enable the jury to say that the acts charged in these counts were willfully committed, as charged in the counts. So that we must refuse the point as stated. [1]

2. There can be no conviction upon the eleventh count of the indictment, being the count in which the defendant is charged with unlawfully and willfully neglecting and failing to render an account or pay over to Westmoreland county the moneys received for the service of certain writs issued out of the courts of Fayette county, unless the jury first find beyond a reasonable doubt that he was thereunto legally required by the controller or other proper officer by a demand properly and lawfully made upon him before the making of the information and the finding of the true bill in this case. *Answer:* That point must be refused, as we have already indicated. To constitute any of the charges that are laid to the defendant in this bill of indictment, it has not been made a constituent element in them

that a demand be first made, as this point would ask us to say to you. There are offenses of embezzlement that do require that—of a particular form of embezzlement— but it is not that form of embezzlement that is charged against the defendant in this case, and this point must be refused. The law does act on the defendant himself, has required him, and not another, to perform these duties, which, if he failed to perform willfully, he can be held guilty. It is not for the controller to admonish him with respect to a previous demand before he can be held guilty. [2]

3. Even if the jury should find beyond a reasonable doubt that the defendant was sworn to the several reports mentioned in the bill of indictment, there can be no conviction upon the twelfth, thirteenth, fourteenth and fifteenth counts, being the counts in which the offense of perjury is charged, unless the jury find beyond a reasonable doubt, first, that the defendant had guilty knowledge of the alleged omissions and neglected to make proper entries in the books provided for that purpose of fees and moneys received for the services of certain writs issued out of the courts of Fayette county, and second, that he had been lawfully required to account to the controller or other proper officer for the said fees and moneys, and had unlawfully and willfully neglected and refused so to do, and third, that he willfully, intentionally and corruptly swore to that which he knew to be false, or having sworn to the best of his knowledge and belief, as the defendant did, not believing it to be true and correct. *Answer:* There are some things in that point that are true, but there are many things in it that are not correct. As we told you with respect to the last point, it is not essential that the controller or other proper officer have made a demand and the defendant refused, before he can be guilty of perjury. He can be guilty of perjury in swearing falsely to a return which the law itself has exacted of him, and has exacted of him a particular oath. The controller makes use of that oath, of course, because he knows from that oath that the return is true, or should know from that oath that the

return is true, in order that he may, as bookkeeper for the county, keep proper accounts. But it is not essential to a conviction of perjury that the controller should have made a demand and the defendant refused. It is not true, either, that what is contained in this third point covers the full duty of the defendant, with respect to the making of that oath. If he "willfully, intentionally and corruptly swore to that which he knew to be false, or having sworn to the best of his knowledge and belief, as the defendant did, not believing it to be true and correct"—those of course would be false oaths—but a man may make a reckless oath, may make an oath that something is true, when he has no reasonable ground for believing that it is true, and he must also have that, in order that he be free from the offense of perjury. If a man obstinately, not caring whether a thing is true or not, recklessly makes an oath, which he has the full means of knowing whether it is true or false, and does not avail himself of it—he can be held guilty of perjury, for thus recklessly making an oath, in addition to the things that are specifically mentioned in this point. The point as stated as a whole we must refuse. [3]

4. There can be no conviction upon the last eight counts in the indictment (the sixteenth and seventeenth counts having been withdrawn) being the counts in which the offense of embezzlement is charged, unless the jury find beyond a reasonable doubt that the defendant has converted to his own use, or used by way of investment in any kind of property or merchandise all or some portion of the fees and moneys mentioned in the said indictment, or has defaulted and failed to pay over the same, after being thereunto legally required by the controller or other proper officer authorized to demand and receive the same. *Answer:* The greater portion of that point does not have application to the case that we are trying. We have nothing to do with the particular form of embezzlement with respect to investing in any kind of property or merchandise, or making default after demand has been made—we have

nothing to do with those forms of embezzlement, we have to do with the question of whether the defendant has converted this money referred to in the bill of indictment to his own use. That you must find, as this point states, beyond a reasonable doubt. You have the manner in which it has been used, and whether it was willfully so used by him, you must determine. This point cannot be affirmed as a whole. We can affirm it in so far as it concerns the case we have on trial. But we will not seek to mystify you about a demand by the controller by affirming that portion, because that is not a constituent element in any charge that is laid to the defendant. The point, as a whole, is refused. [4]

5. We instruct you that there can be no conviction of the defendant upon the counts from the third to the fifteenth in the bill of indictment, both inclusive (the first and second counts having been withdrawn), the said counts being grounded upon secs. 3 and 4 of the Act of assembly of March 31, 1876, P. L. 13, the said section being unconstitutional and void, in so far as they attempt to declare and prescribe certain acts therein mentioned as misdemeanors and provide penalties for the same, no notice of such provisions appearing in the title to the said act, contrary to sec. 3, art. III, of the constitution. *Answer:* Refused. [5]

6. It appearing by the uncontradicted evidence that the defendant did not personally keep the books provided or makes the entries therein, and that he had no knowledge of the omissions charged, but that on the contrary the said books were kept and the entries made therein by his chief deputy, who has had an experience of sixteen years in such work and who, upon inquiry made by the defendant before signing the said reports, declared the several monthly reports were correct and true, and it further appearing that no lawful demand has ever been made upon the defendant by the controller or other proper officer for an account and payment, and that the said fees and money yet remain on deposit in the bank in the official account of

the defendant as sheriff, and that the same or any part thereof has never been converted by the defendant or in any way appropriated to his personal use, we instruct you that there can be no conviction of the defendant upon all or any of the counts in the said indictment. *Answer:* That, of course, in view of what we have already said, cannot be affirmed. There are a great many things in that that we have already referred to and said to you do not constitute any essential element in any of the crimes charged. We cannot say to you, as matter of law, that he did not convert this money to his own use. We cannot say to you as matter of law that the fact that the money was at one time placed in the sheriff's account where he kept money collected by him as sheriff—we cannot say that the putting of the money in that account is not converting it to his own use. That, as we have already said, the evidence clearly developed, was an account that was drawn on for other purposes, and the law knows no such thing as that constituting an "official account." And we cannot say to you that the money is still there, because we do not know. There are several other things in this point that make it impossible for us to affirm the point. The point is refused. [6]

The court in its supplementary charge instructed the jury, inter alia, as follows:

[With respect to the willfulness of it, he says he did not know it. On that question, you will also consider the testimony of his deputy, but you will further consider what the law requires of him as an officer, that it requires him to know, and that he have books, if they are properly kept, that will inform him about what goes on in his own office. You will further consider the testimony, on that issue, with respect to what he said right at the beginning of this case; at the time when he was arrested, it is alleged by two witnesses for the commonwealth that he said that he had this money "and by God! he was going to keep it." If that is true, and he spoke consciously of

these particular fees, that would be plainly indicative of a willful retention of this money. You will consider, in that connection, what his explanation is of what was in his mind, at the time he made whatever remark he did make. Perhaps he is not very definite on the precise terms that he did make use of.] [9]

[The question is not simply whether the evidence satisfies you that this money was appropriated to his own use. That fact would not be difficult of ascertainment—it, in fact, was appropriated to his own use, when it was put in the bank—but did he know that it was there? Did he know that it was being put in the bank? That is the issue of fact, and that is about the only issue of fact that there is, on the question of embezzlement. It is as easy to see that the money has been misappropriated, when it is put in the bank, as it is to see it if it was kept in the sheriff's own pocket. It is an improper use that has been made of it—a use that he had control of, and he alone had control of. If he knew that he was making that improper use of the money he can be found guilty of embezzlement. Willfulness must be present in order that he be found guilty of the embezzlement charges.] [10]

Verdict of guilty, upon which the following sentence was passed:

Defendant sentenced to pay a fine of $44.60 and undergo an imprisonment of separate or solitary confinement at labor in the Western Penitentiary for a period of one year and three months, to be computed from the expiration of the sentence this day imposed at No. 276, August Term, 1911.

*Errors assigned* were (1–6, 9, 10) above instructions, quoting them; (7, 8) rulings on evidence relating to fees on writs received from Indiana, Washington, Armstrong and Somerset counties, quoting the bill of exceptions.

*E. E. Robbins,* of *Robbins & Wyant,* with him *Chas. C. Crowell,* for appellant.—Having selected the most competent and efficient chief deputy possible the defendant

cannot be held criminally responsible for any act or omission of such deputy: Overholtzer v. McMichael, 10 Pa. 139; Miller v. Lockwood, 17 Pa. 248.

The defendant was entitled to have this case submitted to a jury unprejudiced by proof or attempt to prove independent alleged crimes not connected with those charged in the indictment: Com. v. Schoener, 212 Pa. 527.

*W. T. Dom, Jr.,* district attorney, *Nevin A. Cort,* assistant district attorney, *D. C. Ogden* and *R. D. Hurst.* for appellee.

OPINION BY RICE, P. J., March 1, 1912:

It appears that the defendant, who was sheriff of Westmoreland county, was deputized at divers times by the sheriff of Fayette county to serve certain writs, eight in number, issued out of the court of common pleas of the latter county against residents of the former county; that these writs were returned by the defendant, with certain sums indorsed thereon as "my costs"; that the sums thus charged for his services were paid by checks drawn to his order as sheriff; that these checks were indorsed by his deputy by means of a rubber stamp, "Pay to the order of Safe Deposit and Trust Company, Greensburg, Pa., John E. Shields, Sheriff," and deposited in bank in an account kept in the name of "John E. Shields, Sheriff"; and that the checks were duly collected and the proceeds credited to that account. It appears further, that the defendant did not account for, nor pay over these fees to the county treasurer, and did not enter them in the special account book which he was required by law to keep. The indictment in this case related to these transactions. Eight of the counts upon which the defendant was convicted charged misdemeanor in office in willfully neglecting to make proper entry of these fees in the special account book; one count charged misdemeanor in office in failing to account for them; one charged perjury in making oath

to his monthly return; and eight charged embezzlement of the same sums.

By reason of the population of Westmoreland county, the sheriff was subject to the provisions of the Act of March 31, 1876, P. L. 13, which was enacted to carry into effect sec. 5 of art. XIV of the constitution, relative to the salaries of county officers and the payment of fees received by them into the state or county treasury, in counties containing over 150,000 inhabitants. Therefore, his compensation was by salary, which, with the salaries of his deputies and clerks, was a charge upon the treasury of the county, to the extent of the fees collected and paid in by him or earned, where such fees are a charge upon the county treasury. But all the fees collected by him by virtue of his office belonged to the county. The act of 1876 is very explicit upon this point. Section 1 provides, and the idea is reiterated in sec. 15, that all fees limited and appointed by law to be received by county officers, or which they shall legally be authorized, required or entitled to charge or receive, shall belong to the county for which they are elected or appointed; "and it shall be the duty of each of said officers to exact, collect, and receive all such fees to and for the use of their respective counties, except . . . .; and none of said officers shall receive for his own use, or for any use or purpose whatever, except for the use of the proper county or for the use of the state, as the case may be, any fees for any official services whatsoever." Subsequent sections provide an elaborate but easily understood system to be pursued in order to secure proper accounting for the fees received by the officer and payment of the same into the county treasury. Thus sec. 2 makes it the duty of the officer to keep a special account book, the form of which shall be prescribed by the controller, or, where there is no such officer, then by the county auditors, in which an entry shall be made of all the moneys received for fees, and, on the first Monday of each month, to pay to the county treasurer all fees received during the preceding month. He is also required,

by the same section, to file with the controller or auditors, as the case may be, a transcript in detail of his fee account book for the preceding month, to which he shall make oath or affirmation "that the said transcript contains a true and correct list of all the fees received, earned or chargeable upon the county, for services rendered in his office, either by himself, deputies or clerks, during the preceding month . . . . and that he has not received and is not to receive from any person or persons whatsoever, for any official services or duty, any other fees than those so entered on said transcript." Then follows, in sec. 3, the provision that if the officer "shall neglect to render the accounts or to pay over the money received for fees as required by this act, or shall willfully neglect to make any proper entry in the book or books required to be kept, . . . . or fail to comply with any of the provisions of this act, or neglect to discharge any of the duties herein imposed, the same shall be deemed a misdemeanor in office," etc. And finally, sec. 4 provides that any officer who shall "willfully swear falsely" in verifying any account, transcript or bill, required by the act, or in making any affidavit in reference thereto, shall be deemed guilty of perjury.

1. Under any permissible construction of the act of 1876, the fees collected by the defendant on the writs alluded to at the outset of this opinion belonged to the county, and proper entry of the same should have been made in the special account book which the defendant was required to keep and did keep. We need not take up time in discussing a proposition which results so plainly from due consideration of the general purpose and intent of the act as well as its unambiguous words. But it is earnestly contended that the defendant, particularly as the business and duties of his office required him to have the assistance of deputies and clerks, could not be held criminally liable upon the several counts which charged him with willfully and unlawfully neglecting and omitting to make entry, in the books provided for that purpose, of fees received and earned for the service of the writs above alluded to, un-

less "the entries in those books were made by the defendant," or "he had guilty knowledge of the alleged omissions or neglect," or "he willfully and negligently employed an incompetent and unfit person to keep the books and make the entries therein." We cannot agree that this proposition presents a complete summary of the sheriff's responsibility and duty in respect to the entries to be made in the special account book, or comprehends every state of facts upon which conviction of the charges embraced in these counts could be maintained. It leaves out of view the duty which rests upon the officer, of exercising such reasonable supervision of the acts of his deputies and clerks as the circumstances admit of. He is the responsible head of the office. He assumes its high functions upon his implied representation that he has ability to give such supervision, and upon his implied undertaking, as well as his positive official obligation, to give it. While he may act through a deputy, yet the duty of making the entries devolves primarily upon him, and this includes the duty of exercising supervisory care and vigilance to see that the statutory requirement is fulfilled. He is required, by the act, to make oath to the correctness of the account, even though the entries in the book be made by his deputy or clerk—a requirement which would not have been imposed if the legislature had intended that he could completely perform his whole duty, with regard to the keeping of the account, by employing a competent deputy or clerk. Such construction of the act would be contrary to its letter and spirit and would seriously impair the efficacy of its wise provisions. It would tend to encourage a kind of willful neglect of official duty which, if it became common, would probably result in gross abuses which the penal provisions of the statute were intended to prevent. As the learned trial judge well said, in refusing the point under consideration, "There is duty of supervision and vigilance and care and verification and oversight which may be so grossly neglected as to become in itself active wrongdoing that would enable the jury to say

that the acts charged in these counts were willfully committed as charged in the counts." The refusal of the point and the answer thereto were correct.

2. By the point the affirmance of which is the subject of the second assignment of error, the court was requested to charge that there could be no conviction on the count which charged as a misdemeanor in office the neglect to account for and pay over the moneys received for service of the writs above named, unless the jury found that he was thereunto lawfully required by the controller or other proper officer, by demand made upon him. This point was properly refused, for the reason that, by the terms of the statute, neither the officer's duty to account for and pay over the money, nor his guilt of misdemeanor in office in neglecting that duty, is made to depend upon any prior demand by any other officer. It was not incumbent on the commonwealth to allege and prove a fact that the statute does not make an essential.

3. For the same reason, if for no other, the point which is quoted in the third assignment of error, and which relates to the essentials to a conviction upon the counts charging the defendant with having willfully sworn falsely to the monthly returns, was properly refused. The duty of the officer to make the oath, and his duty to swear truthfully in verifying his account, does not depend upon a previous demand upon him by any other officer that he account for all the fees he has received. That is an obligation which the statute itself imposes upon him. Nor was the point strictly accurate in asserting that, in order to convict, the jury must find that "he willfully, intentionally, and corruptly swore to that which he knew to be false, or having sworn to the best of his knowledge and belief, as the defendant did, not believing it to be true and correct." The words of the act are, "shall willfully swear falsely." The oath is not "taken under such circumstances of haste or surprise as afford no opportunity for deliberation." It is required to be made by an officer whose opportunities and duties enable and require him to

know whether the account is true or not. Before making the oath he is presumed to investigate and deliberate, and much of the efficacy of the statutory provisions depends upon his fidelity in that regard. It is true, that even in the exercise of the vigilance and care that the law imposes on the officer, honest and unintentional mistakes may occur, and for such mistakes the officer cannot be held criminally liable. But it is going too far to say that his mere belief of the correctness of his account, no matter how unfounded or how recklessly formed, will excuse him from the consequences of willfully swearing falsely. In the case of such an oath, taken under such circumstances as we have alluded to, it was proper and not irrelevant, under the evidence adduced at the trial, to qualify the point by calling the jury's attention to the principle enunciated and applied in Com. v. Cornish, 6 Binn. 249, that a person swearing willfully and deliberately to a thing which he rashly believes, but has no probable cause for believing, and which is in fact false, may be guilty of perjury. In no later Pennsylvania decision of authority that has come to our notice has this principle been disputed, and in at least two cases it was distinctly recognized by the Supreme Court: Steinman v. McWilliams, 6 Pa. 170, 178; Brooks v. Olmstead, 17 Pa. 24, 29. See, also, 3 Greenleaf's Ev. (15th ed.), sec. 200. The instructions given in answer to the point, as well as those given upon the same subject in the supplemental charge, were in substantial accord with this doctrine and contain no reversible error.

4. The court was requested to charge that there could be no conviction on the counts charging embezzlement unless the jury found that the defendant had "converted to his own use" or had "used by way of investment in any kind of property or merchandise" all or some portion of the fees, or had "defaulted and failed to pay over the same after being thereunto legally required by the controller or other proper officer authorized to demand and receive the same." The answer to this point is the subject of the fourth assignment of error. While the

point, as a whole, was refused, the court explicitly instructed the jury, in the same connection, that before they could convict on these counts they must find, beyond a reasonable doubt, that the defendant had converted the money to his own use. But, inferentially at least, other portions of the answer conveyed the idea that it was not necessary to prove that the defendant had invested the money in any kind of merchandise or property, or that a demand for payment of the money had been made upon him by any other officer. The same idea was conveyed in the general and supplemental charge, and it is fair to assume that the jury so understood the answer to this point. In support of the contention that a demand was necessary, counsel cite and rely upon Com. v. Shoener, 212 Pa. 527. But the counts upon which the defendant was convicted in that case (we quote from the opinion of Justice Brown) "charged him simply with having failed to pay over the license fees, 'when thereunto legally required by the county of Schuylkill, or its legally authorized officers, to the treasurer of the county of Schuylkill, he being the proper officer authorized to demand and receive the same,'" and it was held that the conviction was erroneous because no such demand had been made as was contemplated by the clause of the statute under which the counts were drawn. In the present case, each of the embezzlement counts, after necessary and proper preliminary averments relative to the collection of the fees for service of the particular writ, charged that the defendant "did then and there unlawfully, willfully and fraudulently convert and appropriate the same to his own use, and embezzle the same." No allegation of a prior demand was made, and none was necessary in order to charge the particular offense for which the defendant was indicted. "The sixty-fifth section of the Act of March 31, 1860, P. L. 382, clearly specifies four distinct and separate acts with reference to public money, which shall constitute the offense of embezzlement, to wit, conversion to the officer's own use, investment in property or merchandise, becoming a defaulter,

or failing to pay over on proper demand. These are enumerated in the disjunctive, and it is further declared that 'every such act' shall be deemed and adjudged an embezzlement. Each of these acts, therefore, though of varying character and degree of moral turpitude, is of equal legal import, and by itself constitutes the full statutory offense:" Com. v. Mentzer, 162 Pa. 646. These counts charged the first of these statutory offenses and, therefore, a prior demand was not necessary to its completion: Com. v. Shoener, 30 Pa. Superior Ct. 321, 328, s. c., 216 Pa. 71. The fourth assignment is overruled.

5. Next in logical order, although not in number, are the ninth and tenth assignments, and that portion of the twelfth in which complaint is made of the instructions given by the court, in its supplementary charge, upon the subject of conversion. In considering these instructions it is to be borne in mind that the court was speaking of the particular case, and was not laying down an abstract rule of law that would be applicable to every case of the mere deposit in bank of fees collected by a county officer. They are to be reviewed in the light of the undisputed facts that the money received for the service of the Fayette county writs was deposited in bank to the credit of an account kept in the defendant's name as sheriff, and that the defendant deposited in the same bank account his own personal funds and drew on the fund, from time to time, checks in discharge of purely personal obligations and other matters. In his general charge the learned judge correctly summarized the facts brought out by the cross-examination of the defendant and his deputy, and by the documentary evidence relating to this bank account, when he said, "that this account was not only drawn upon in the payment of writs and in the payment of those whose money was held in trust but it was drawn upon for a great variety of purposes that were personal to the sheriff himself, and, in addition thereto, that this fund was not made up solely of money that was collected from the execution of process in the sheriff's hands, but that, from time to

time it was added to by other moneys that belonged to the sheriff personally." We need not discuss the sufficiency of these acts standing alone to establish the embezzlement charges. They do not stand alone. In addition to these facts, it should be recalled that entries of the fees in question were not made in the special account book as they were received from time to time, that they were not included in the several monthly returns or transcripts in which they should have been included, and were not paid over to the county. In view of all these admitted and undisputed facts, and of the explicit and unambiguous declaration of the statute that the fees received by the officer by virtue of his office are collected for the use of the county and belong to the county, the court was within its province in saying to the jury that there was a misappropriation of the fees in question and that, if the defendant knew that he was making that improper use of the money, he could be found guilty of embezzlement, particularly as this was immediately joined with the instruction, which had been given in other parts of the charge as well, that "the willfulness must be present in order that he be found guilty of the embezzlement charges." The judge did not say, nor is there anything in what he said from which the jury could infer that he meant, that the admitted and undisputed facts above alluded to established the willfulness of the misappropriation. On the contrary, the jury were clearly given to understand, by the instructions as a whole, that though there was a misappropriation, yet willfulness was essential to conviction, and that it was for them to, determine, from all the evidence, whether this essential had been established. In Com. v. Ellis, 46 Pa. Superior Ct. 72, it was held that, if certain facts which in law constitute a sale are testified to by the defendant himself, the judge does not invade the province of the jury by instructing them that the transaction was a sale, for the province of the judge is not merely to counsel, but to instruct, and it is the duty of the jury to take his instructions as the best evidence of the law. The same principle

has been applied in many other cases, both civil and criminal, and is applicable here. Instructing the jury clearly as to the legal effect of the facts just alluded to was well calculated to bring their minds directly to a proper consideration of the real matter of fact in dispute, namely, the willfulness of the misappropriation. This dispute arose out of the defendant's contention that he had no knowledge that the money received for the service of these Fayette county writs was deposited in bank; in other words, that they had been collected and deposited by his deputy without his knowledge. That question of fact was submitted to the jury, with comments which were applicable to the case but which left them free to decide the question for themselves on the evidence. We cannot agree with the appellant's counsel, that the manner in which it was submitted was inadequate or unfair.

Speaking of willfulness as an essential element of the offense, the learned judge said: "The act, to be a criminal act, must be a willful one; he must have knowledge of the violation of the law; he must know that he has that money." He then proceeded to comment on the evidence pertaining to that question, as follows: "With respect to the willfulness of it, he says he did not know it. On that question you will also consider the testimony of his deputy, but you will further consider what the law requires of him as an officer, that it requires him to know, and that he have books, if they are properly kept, that will inform him about what goes on in his office. You will further consider the testimony on that issue, with respect to what he said, right at the beginning of this case; at the time when he was arrested, it is alleged by two witnesses for the commonwealth that he said that he had this money 'and by God he was going to keep it.' If that is true and he spoke consciously of these particular fees, that would be plainly indicative of a willful retention of this money. You will consider, in that connection, what his explanation is of what was in his mind, at the time he made whatever remark he did make. Perhaps he is not very

definite, on the precise terms that he did make use of."
The specific criticism made of this part of the supple-
mental charge is that the court did not quote the de-
fendant's explanation of the conversation as given on the
witness stand. But a careful reading of that testimony
convinces us that the court was right in saying that the de-
fendant was not very definite as to the terms he made use
of. To have quoted his entire testimony upon the sub-
ject would have made the confused and unsatisfactory
nature of his attempted explanation of this significant
testimony still more apparent. In Com. v. Kaiser, 184
Pa. 493, where the adequacy of the judge's review of the
evidence in his charge was under consideration, the court,
by MITCHELL, J., said: "It is enough if he gives to the
jury a general review of the evidence on the one side and
the other, which fairly and adequately presents the re-
spective contentions of the parties, with enough reference
to the items of evidence to assist the jury in recalling it as
a substantial whole, and to appreciate its bearing. View-
ing the instructions complained of in these three assign-
ments, in the light of the evidence, we conclude that they
come fully up to this standard and are free from other
error of law.

6. The point embraced in the sixth assignment of error
was properly refused, because it was not stated hypothet-
ically but it assumed the existence of certain facts which
were in controversy under the evidence and which it was
the province of the jury to determine, and concluded with
an instruction that there could be no conviction of the
defendant upon any of the counts of the indictment. It
sufficiently appears from what we have heretofore said,
that such instruction would have been erroneous.

7. It was contended by defendant's counsel, and the
court was requested so to charge, that the provisions of
the third and fourth sections of the act of 1876 are uncon-
stitutional and void in so far as they attempt to declare
and prescribe certain acts therein mentioned as misde-
meanors and provide penalties for the same, because no

notice of such provisions appears in the title of the act. We need not take up time in elaborately discussing that question. The principle that controls it, and required refusal of the point, was clearly set forth in Com. v. Jones, 4 Pa. Superior Ct. 362. Further, in Taggart v. Com., 102 Pa. 354, it was held that the title of the act is sufficiently indicative of all the provisions enacted to comply with the constitutional requirement relative to the title of acts.

8. The next question to be considered is raised by the seventh and eighth assignments of error and relates to the admissibility of evidence that the defendant did not enter in the special account book nor in his monthly transcripts, and did not account for and pay over to the county treasurer, fees received by him for the service of other writs, issued out of the courts of other adjoining counties, which were not embraced in any of the counts of the indictment. The doing of another criminal act, not part of the issue, is not admissible as evidence of the doing of the criminal act charged, except when offered for the specific purpose of evidencing design, plan, motive, identity, intent, or other relevant fact distinct from moral character: Wigmore on Evidence, sec. 192. In subsequent sections of his valuable work the learned author shows, by reason and abundant authority, that such an act, notwithstanding its criminality, may be admissible, in some circumstances, in so far as it is relevant to evidence the party's knowledge, intent, or design, if such be in issue: Wigmore on Evidence, secs. 300, 305. One of the illustrations he gives is as follows: On a charge of larceny by making false entries in books of account kept by the defendant employee, the making of other incorrect entries in the same set of books within a few months before and after is admissible to negative the probability of honest mistake in figuring; if only one or two such other errors are offered they should be limited to substantially the same transaction and period; the range of time and subject may broaden with the number of errors offered. This illustration aptly

applies to the present case. A leading case on the subject is Goersen v. Com., 99 Pa. 388, where the general principle was stated as follows: "It is true, a defendant cannot be convicted of the offense charged, merely because he has committed another offense, either of a similar or dissimilar kind. Hence, as a general rule, evidence of his participation in another independent and distinct crime, cannot be received simply for the purpose of proving his commission of the offense for which he is on trial: . . . . It cannot be received to impeach his general character, nor merely to prove a disposition to commit crime. Yet under some circumstances, evidence of another offense by the defendant may be given. Thus it may be to establish identity; to show the act charged was intentional and willful, not accidental; to prove motive; to show guilty knowledge and purpose, and to rebut any inference of mistake; in case of death by poison, to prove the defendant knew the substance administered, to be poison; to show him to be one of an organization banded together to commit crimes of the kind charged; and to connect the other offense with the one charged, as part of the same transaction." We will not incumber this opinion by reviewing the numerous cases in which, upon one or more of the grounds above suggested, evidence of such other criminal acts was held admissible. Some of these cases are cited in Com. v. Valverdi, 32 Pa. Superior Ct. 241, s. c., 218 Pa. 7; Com. v. Levinson, 34 Pa. Superior Ct. 286; Com. v. Griffin, 42 Pa. Superior Ct. 597. Here the evidence tended to show that the course pursued with regard to fees on writs from other outside counties, at or about the same time, was the same course that was pursued with regard to the Fayette county writs. The number of instances in which such general method of dealing with that particular kind of writs was pursued was sufficiently large, and the times of their occurrence were sufficiently near the instances charged in the indictment, as to lend probability to the allegation that the latter resulted from intention and design and were part of a system, and to negative, or at least weaken,

the probability of their being the result of inadvertence or mistake. Having regard to the nature of the issue, and of the contention that the acts charged were not willful and intentional, we conclude that, for the purpose stated, the evidence was competent, and, having been sufficiently guarded in the instructions which the court gave to the jury, there was no error in its admission.

9. There is printed in the appendix to the appellant's paper-book what purports to be the closing address to the jury of one of the counsel for the commonwealth, to which is appended a certificate of one of the official stenographers of the court, which, so far as it relates to this matter, is in these words: "that by engagement and employment of the defendant's counsel I reported the address of D. C. Ogden, Esq., to the jury in the above stated case, and that the foregoing transcript of the same is true and correct to the best of my ability to report and transcribe the same." It does not appear that the stenographic report of the address was made or was transcribed in longhand by direction of the court, but it does appear that the transcript is not included in the report of the proceedings upon the trial which the judge approved and directed to be filed. Clearly, it is not part of the record. Moreover, the correctness of the report of the address is not conceded, but is expressly denied by counsel for the commonwealth. It necessarily follows that it cannot be considered in disposing of the eleventh assignment of error: Com. v. Weber, 167 Pa. 153. But it appears, by the official report of the trial, that at the close of the address of commonwealth's counsel, defendant's counsel moved the court to withdraw a juror and continue the case, for the alleged reason that the former had made certain improper remarks in his address, specifying them, and that the court refused the motion and noted an exception. This ruling is the subject of the eleventh assignment of error. There are two recognized methods of bringing remarks of counsel, in addressing the jury, upon the record so as to make the ruling of the court relating thereto subject to review. One method

is to call the court's attention to them at the time, request that they be placed on the notes of trial, and except to the court's ruling upon the motion to withdraw a juror and continue the case, or other similar motion: Com. v. Weber, 167 Pa. 163. The other method is that which was pursued in Holden v. Penna. R. R. Co., 169 Pa. 1, where the matters complained of were brought before the court by an affidavit in support of their verity. Neither of these methods was pursued in the present case. There was the bare assertion in a motion, that counsel had made certain remarks; but this assertion was not verified in any way, nor is the truth of the assertion implied in the court's refusal of the motion. It is strenuously objected that this did not bring the remarks on the record for purposes of review, and, in the opinion of the writer, this objection is well founded, and is supported by several cases. Amongst these, I refer to Com. v. Eisenhower, 181 Pa. 470; Com. v. Windish, 176 Pa. 167; Guckavan v. Lehigh Traction Co., 203 Pa. 521; Com. v. Smith, 2 Pa. Superior Ct. 474; Sheehan v. Rosen, 12 Pa. Superior Ct. 298; Com. v. McMahon, 14 Pa. Superior Ct. 621. But granting that this position is not well taken, and conceding, as must be conceded, the impropriety of some of the alleged remarks of counsel, it does not necessarily follow that the refusal of the motion is, of itself, ground for reversal, the case in other respects having been well and carefully tried. "When counsel misstate facts or material evidence, or resort to comment unfair or unduly prejudicial to the other side, it is the duty of the opposing counsel at once to call the attention of the court to the matter, and the action of the court may then become the subject of exception. In general it is a matter of discretion and reviewable only for abuse: Com. v. Windish, 176 Pa. 167; Com. v. Weber, 167 Pa. 153:" Com. v. Ezell, 212 Pa. 293. There may be instances where the refusal to withdraw a juror because of objectionable remarks of the district attorney would be, under all circumstances, an abuse of discretion, as, for example, where the counsel calls attention to the fact that the defendant has

not offered himself as a witness in the case. But the remarks complained of in the present case are not of that nature. There is fair ground for surmise that some of them may have been called out by what had been said by defendant's counsel. But at any rate the court was in better position to know than we are whether they were likely to have a prejudicial effect, an effect which could only be counteracted by allowing the motion. Upon a full view of the judge's charge, which followed these alleged objectionable remarks, and of the evidence in the case, we are unable to conclude that there was such abuse of discretion as requires a retrial of the case.

The remaining matter to be noticed is the sentence, and, for the reason given in our opinion herewith filed in the case against the same defendant, the record must be remitted to the court below for correction of the sentence. All of the other assignments are overruled.

The sentence is reversed and the record is remitted to the court of quarter sessions of Westmoreland county, with direction that the court proceed and sentence the defendant afresh in due order and according to law; and it is ordered that the defendant forthwith appear in that court for the purpose of sentence as aforesaid.

HENDERSON, J., dissenting:

I am unable to concur in the opinion of the majority of the court filed in this case. The instruction of the learned trial judge on the subject of embezzlement and perjury had a tendency to, and probably did, mislead the jury to the prejudice of the defendant. The evidence was clear and positive that the several amounts alleged to have been embezzled were costs received by the defendant's chief deputy and by him deposited in the bank where the sheriff kept his account in his name as sheriff. There was no evidence that the money was not there at the time of the arrest, at the time when the indictment was found or at the time of trial. That the sheriff had a right to deposit the money received by him or to authorize

his deputy to so deposit it in his official name in a responsible bank cannot be questioned. This had been done by him during his term of office in the case of very large sums of money and no criminal inference could be drawn from that fact. On the contrary, the depositing of money in his name as sheriff was a prima facie declaration at least that the fund so deposited was held by him in his official capacity. The evidence that he had checked out of this account money for personal uses did not tend to show that he had embezzled what remained in the bank, for it was shown without contradiction that he deposited his own money to a considerable extent at least in this account. The court charged the jury that they could consider the placing of these items of costs in the bank to the credit of the defendant as sheriff as evidence of embezzlement and in the supplemental charge the same instruction in substance is repeated. The jury had failed to agree after having been out several hours and the court was requested to give additional instructions on the subject of embezzlement and perjury; whereupon, the court gave the following instructions to the jury: "The question is not simply whether the evidence satisfies you that this money was appropriated to his own use. That fact would not be difficult of ascertainment—it, in fact, was appropriated to his own use when it was put in the bank—but did he know that it was there? Did he know that it was being put in the bank? That is the issue of fact, and that is about the only issue of fact that there is, on the question of embezzlement. It is as easy to see that the money has been misappropriated, when it is put in the bank, as it is to see it if it was kept in the sheriff's own pocket. It is an improper use that has been made of it—a use that he had control of, and he alone had control of." It is difficult to see how the jury could have received any other impression from this instruction than that the fact of the deposit of this money in the bank by the sheriff's bookkeeper and deputy if with the knowledge of the defendant was sufficient evidence to support the

charge of embezzlement. These sums of money were received from time to time by the deputy and presumably deposited from day to day as they came into the deputy's hands. To hold that this is an act of embezzlement is not in harmony with any statute creating the offense to which our attention has been called. There is no evidence that any demand was made on the defendant by the accounting officer of the county for payment of this sum or that it was actually taken from the bank or that it was applied to any purpose of the defendant and the jury would be very naturally led to the conclusion that if an embezzlement was made it existed in the depositing of the money in the bank. The instruction quoted was a last word to the jury on this subject and as there was confusion or misapprehension on the part of the jurors as to what had been said in the very long charge of the court at the conclusion of the trial this must have had a very decisive effect on the minds of the jury in inducing them to reach a conclusion on this branch of the case.

The charge of perjury contained in the indictment arose out of the affidavit made by the defendant to his statement of account for the month of January, 1911. This statement was made up by his bookeeper and chief deputy, Mr. Hoke, who had occupied that position during the term of the defendant and for several years prior thereto. The defendant did not keep the books in his office and was not familiar with the details of the accounts as stated by him and Mr. Hoke, and the evidence on this point is not contradicted. All of the monthly reports were made out by Mr. Hoke and this officer had charge of the accounts in the office, had possession of the bank book, made deposits and drew the checks in practically all of the transactions of the office. The defendant alleged that he inquired of his deputy when signing the monthly reports whether they were correct or not and that relying on this information he sent them to the controller. On this state of facts the question was not simply whether the report was correct or not but whether the

defendant acted in good faith and upon a reasonable belief of its accuracy. He might not absolutely know that it was correct and yet have such confidence in the experience and integrity of his bookkeeper and accountant that he would make affidavits to its correctness to the best of his knowledge and belief as was done in this case. But this would not constitute perjury. It is within the knowledge of us all that a vast amount of the official business that is transacted, both public and private, involves the statement of accounts and the making of reports the details of which are not within the knowledge of the persons making them. They must rely on the accuracy and faithfulness of subordinates in such cases and when they do so in good faith they are not to be charged with perjury if it appear that some items which should have gone into the account had been omitted or others are not exactly stated. The rule stated in 1 Russell on Crimes, 666, is that evidence is essential not merely to show that the defendant swore falsely in fact but also as far as circumstances tend to such proof to show that he did so corruptly, willfully and against his better knowledge. This is the doctrine also of 1 Hawkins P. C. 429; Rex v. DeBeauvoir, 7 C. & P. 17, decided by Chief Justice DENMAN; 3 Stark. Evid. 860; 11 Bishop, Crim. Law, sec. 396; U. S. v. Babcock, 4 McLean, 113; Com. v. Brady, 71 Mass. 78; U. S. v. Shellmire, 1 Baldwin, 370; 2 Whart. Crim. Law, sec. 2199. It was decided in the court of oyer and terminer of Philadelphia county in Com. v. Cornish, 6 Binney, 249, that a defendant might be convicted who had deliberately sworn to the identity of a person who was shown not to have been at the place nor connected with the transaction to which the affidavit related. But this case was put on the ground that it is perjury if a man swear willfully and deliberately to a matter that he rashly believes, but which he has no probable cause for believing; and is so interpreted in Steinman v. McWilliams, 6 Pa. 170, 178, in which case the court refers to Com. v. Cornish, as "clearly adopting the view of

Sir William Blackstone that there must be the malo animo, the scienter of falsehood or a reckless rashness which is its equivalent. It was proper for the court to have added these explanations to the naked definition given; and for want of them the jury may have fallen into error in supposing that swearing willfully and falsely by mistake or surprise was perjury." And it is into the same error that the jury probably fell in the case before us, for a part of the instruction in the supplemental charge was "or if the witness swears to a thing that he does not know whether it be true or false and says that it is true that would be perjury." And in the same connection, "One who swears that a thing is true to the best of his knowledge and belief conveys the idea that he has knowledge and that belief is founded on that knowledge. Where he has an opportunity of knowing the truth and does not avail himself of it, but makes an affidavit without probable cause he can be held guilty of perjury. In any of those cases the affidavit is willfully corrupt." No reference was there made to the circumstances justifying the sheriff in placing confidence in his deputy nor instruction that if he, in the honest belief that the report was correctly made up, attached the affidavit of its correctness according to the best of his knowledge and belief he ought not to be convicted of perjury. The charge would give the impression to the jury also that it was the duty of the sheriff to know that his deputy had correctly stated the account and that to make the affidavit without this personal knowledge would amount to perjury. It is doubtless true that a person might make an affidavit with that reckless rashness which is the equivalent of a wicked mind as stated by Mr. Justice Colter in Steinman v. McWilliams, but that does not include cases of swearing by surprise or mistake as is shown in that case. When, therefore, the jury had disagreed as to the subject of perjury and asked for further instructions it was the duty of the court to present the defendant's side as clearly and fully as that of the commonwealth, for this was the stage

of the case when the charge of the court was impressive and most effective. The tenth and twelfth assignments should therefore be sustained.

I would also reverse on the seventh and eighth assignments of error. The evidence covered by those assignments related to independent transactions not shown to have been engaged in by the defendant nor to have been known by him. True, they related to business which passed through the sheriff's office but not necessarily through the sheriff's hands and in order to give to the testimony the effect claimed the commonwealth should under any circumstances have been required to show that the defendant knew that the items of costs had been paid.

MORRISON, J., concurs in the dissent.