## Commonwealth v. Mehring.

*Criminal law—Rape—Statutory rape—Declarations by defendant—Evidence—Date of offence—Indictment—Reputation for chastity.*

1. On the trial of an indictment for statutory rape, it is proper to admit statements made by defendant at the time of his arrest which may be construed as an admission of guilt, and expressing a desire to settle the case by payment of money, if there is nothing to indicate that the statements were other than voluntary, without inducement or threat.

2. On such a trial, it is not necessary to prove the commission of the offence on the precise date charged in the indictment.

3. In such case, where the reputation for chasity of the girl is brought into question and the court has fully charged as to reasonable doubt, it is not error to charge, in connection with other remarks on the same subject, "if you find by the weight and preponderance of the evidence that the defendant established against [the girl] a reputation for bad chastity, it will relieve the defendant to that extent from the charge of statutory rape."

*Practice, C. P.—Trial—Objectionable remarks of counsel.*

4. The proper way to bring objectionable remarks of counsel before the court is to except thereto formally and definitely at the time of their utterance, so that the exception will become a part of the record, on which a motion to withdraw a juror, continue the case, or a request for a cautionary admonition to the jury by the trial judge may be based.

5. In such case, it is not sufficient for the opposing counsel to object and ask the court to protect the party or witness.

Motion for new trial. Q. S. York Co., Jan. Sess., 1923, No. 28.

*James G. Glessner* and *Harvey A. Gross*, for defendant and motion.

*C. W. A. Rochow* and *W. W. Van Baman*, District Attorney, contra.

Ross, J., Dec. 10, 1923.—Stewart P. Mehring, the above-named defendant, was indicted at the January Sessions with the commission of the crimes, (1) fornication and bastardy; (2) carnally knowing and abusing a woman child under the age of sixteen years; and (3) adultery.

The crimes were alleged in the indictment to have been committed by the defendant on the body of one Marguerite Urick, on Feb. 8, 1922.

On April 19, 1923, the defendant entered a plea of "not guilty," and appeared for trial, and was convicted "in manner and form as he" stood "indicted."

A motion in arrest of judgment and for a new trial was entered April 24, 1923, based upon the following quoted reasons:

"1. The court erred in admitting the evidence of George L. Meckley and William Berkheimer relative to an alleged confession made by the defendant, a particular assignment of which will be more fully set forth when notes of testimony are reduced to writing.

"2. The court erred in admitting evidence of other illicit relations between Marguerite Urick and Stewart P. Mehring, the defendant, without evidence showing illicit relations on Feb. 8, 1922, the day alleged in the indictment."

When the motion was argued Oct. 9, 1923, the following additional reasons were filed:

"1. The rights of the defendant were unduly prejudiced by the fact that the special counsel for the Commonwealth, as shown on page 39 of the notes of testimony, wherein the special counsel for the Commonwealth imputed that witness David Rhoades was a liar, while the witness was on the stand, all of which occurred over the objection of defendant's counsel and a demand for protection of defendant's rights having been made by defendant's counsel.

"2. Defendant's rights were unduly prejudiced by the special counsel for the Commonwealth openly referring to and calling the defendant a 'scoundrel,' while Mrs. Frank Bankers, a witness for the defendant, was on the stand, as appears on page 48 of the notes of testimony, under objection of counsel for the defendant.

"3. The court erred in its charge to the jury, beginning with the last paragraph on the bottom of page 65 of the notes of testimony and concluding with the first paragraph on page 66 of the notes of testimony, wherein the court said as follows:

" 'The Commonwealth comes back with what is called rebuttal, and attempts to prove the good reputation of Mary Marguerite Urick for chastity in that neighborhood. It brings quite a number, seven or eight, or probably more, witnesses, who testify to you in the manner which you observed and in the language in answer to questions. So that one part of your analysis will have to be to find out whether Mary Marguerite Urick did really have a bad reputation for chastity in her neighborhood, because if you find, by a weight and preponderance of the evidence, that the defendant established against Mary Marguerite Urick a reputation bad for chastity, it will relieve the defendant to that extent from the charge of statutory rape,' for the reason that the evidence of the character of Mary Marguerite Urick must not be proven by the weight or preponderance of the evidence, it being sufficient if the evidence of bad character of the said Mary Marguerite Urick raises a reasonable doubt in the minds of the jury.

"4. The court erred generally in its charge to the jury on the value of defendant's character evidence, and particularly to that part of the charge reported on page 67 of the notes of testimony, for the reason that the court would not say to the jury that the defendant's evidence of good character is of such substantial character as might of itself be sufficient to raise a reasonable doubt of the guilt of defendant, but did state to the jury that the evidence of the good character of the defendant had to be proven by the weight and preponderance of the testimony."

The testimony of William Berkheimer, the constable who arrested the defendant, referred to by the first reason filed April 20, 1923, is found on page 20 of the stenographer's transcript as follows:

"Q. (By Mr. Rochow.) Now, Mr. Berkheimer, what did Mehring say to you, if anything, about this case when you arrested him? A. When I arrested him? After he was arrested, I taken him out York Street to his house and while he was getting out of the machine, he asked me whether I would go to see Urick. Mr. Glessner: That is not in the offer. Q. (By Mr. Rochow.) No, that is not what I want. Merely say what he said about this case. A. He didn't say more than 'I am in it, and what about it?' he says. He says, 'I might just as well give Urick a couple thousand as give it all to the damn lawyers to settle it up.' "

The evidence of George L. Meckley, referred to by the same reason, appears on the stenographer's transcript, page 23, as follows: "Question read to the

4 D. & C.

witness by the official stenographer as follows: 'Tell the court and jury, please, what Mehring said to Berkheimer in your presence and in your hearing.' Mr. Rochow: In reference to this case. A. Mr. Mehring addressed the officer as 'Berky.' He says, 'You know I am just up against it. I don't know what to do.' 'Now,' he says, 'I am in it; he has got me, and I can't get out of it.' 'Now, you find out when Urick is working, and if he isn't working, go out to the house this evening and see if we can't settle it up. I would rather pay him a couple thousand dollars and straighten it up right here as to drag it around and give it to the damn lawyers.' That is all he said."

There was nothing to indicate that the statement made by the defendant, as testified to by these two witnesses, was other than a voluntary statement made without any inducement or threat. The statement was pertinent to the issue then before the court, and should not have been excluded because it was purely voluntary: Com. v. Aston, 227 Pa. 112; Com. v. Tenbroeck, 265 Pa. 251.

The second reason has no merit. The evidence of the carnal intercourse alleged by the Commonwealth was sufficiently proven within the scope of time allowed under the date contained in the indictment.

"The prosecutor may give evidence of an offence committed on any other day previous to the finding of the indictment:" Jacobs v. Com., 5 S. & R. 315-316.

Neither of the reasons were supported by any argument offered by defendant's counsel, and we take it for granted they were abandoned.

The arguments offered in support of the first and second additional reasons filed Oct. 9, 1923, are based upon a theory that certain remarks made by the prosecuting attorney, while he was cross-questioning some of the witnesses for the defendant, unduly prejudiced the minds of the jurors, and are, therefore, just reasons for the granting of a new trial. We did not so regard them at the trial, and after a close examination of the stenographer's transcript and the occurrence referred to, we are convinced that the remarks complained of could not have influenced the jury in concluding and rendering its verdict.

The cases cited by the able counsel for defendant in support of this theory, we think, are not applicable to the circumstances now under consideration.

The first question is based on a remark made by the prosecuting attorney to the attorney for defendant in a colloquy, as shown in the stenographer's transcript, pages 38-39, as follows:

"Re-cross-examination by Mr. Rochow: Q. And you want to tell this jury, again, do you, that this little girl came to you, when she was eleven years old, and told you that this gentleman, her own father, fooled with her? Is that what you want to tell this jury? 'A. It didn't have to happen in 1919. Q. Well, when was it? A. Sometime during the year 1919, on till my father sold the store. Q. When did your father sell his store? A. He sold the store in 1922. Q. And then this girl told you that her father fooled with her? A. Yes, sir. Q. How did she come to tell you that? A. Just talking with her. Q. What led up to such a conversation? A. I decline to answer. Q. Oh, you do decline to answer? Well, you will answer it, young man. What led up to that conversation? A. (No response.) Q. (By Mr. Glessner.) Why do you decline to answer? A. I don't wish to incriminate myself. Mr. Rochow: Don't wish to incriminate yourself with getting into a conversation about her father. I didn't ask what he did; I am asking what led up to the conversation. Mr. Glessner: Well, if he was to tell you that, it would incriminate himself. He doesn't propose to answer. Mr. Rochow: That is, if he would not be lying, you mean? Mr. Glessner: You have no right to impute that he

is lying. The Court: Now, gentlemen, you are both trying to testify. Q. (By Mr. Rochow.) Then you want this jury—Mr. Glessner: If the court pleases, my client has rights, and I am here to protect those rights. No attorney has the right to throw back into the mouth of any witness that he is lying. It is not only discourteous and unprofessional, but it is not and should not be permitted, and I ask for the protection of this court of my client against this method."

The second reason is based on a remark made by the Commonwealth's representative while he was cross-examining one of the witnesses for the defendant, to impeach the reputation for chastity of Mary Marguerite Urick, as shown by the stenographer's transcript, page 48.

"Cross-examination by Mr. Rochow: Q. Didn't you tell Mr. Urick, within the past two days, all you ever knew about Marguerite was that she was a little lady? A. Why, I didn't talk to him the last few days. All I ever seen about her—Q. No, answer the question. To-day a week ago? A. Yes, sir; I never seen nothing about her myself. Q. Well, didn't you tell him that? A. Yes, sir. Q. And that this scoundrel, Mehring, ought to be—Mr. Glessner: One moment. Mr. Rochow: Well, maybe, that isn't right. Mr. Glessner: No, I should say it isn't."

No ruling was asked from the trial judge, nor was any reference made to either occurrence during the trial, before the commencement of the charge to the jury or at any time thereafter. As before remarked, we do not think those two incidents had any influence with the jury, either for or against the defendant.

If this court were to grant new trials for the frequent outbursts of words by attorneys trying the case, on the conjecture of the counsel whose client was the loser of the verdict, we should never finish trying any defendant.

The recognized way to bring objectionable remarks of counsel before the court for adjustment is to formally and definitely except to the remarks at the time of their utterance, so that the exception will become a part of the record on which a motion to withdraw a juror, continue a cause, or a request for cautionary admonition to the jury by the trial judge may be based. And, so far as I have reviewed the authorities, this should be done in a way and at a time during the trial that would give the trial judge an opportunity to exercise his discretion, when, if the trial judge abuses such discretion, the error can be appealed to and reviewed by the appellate court: Haines v. Com., 99 Pa. 410; Com. v. Shields, 50 Pa. Superior Ct. 1; Com. v. Dyminski, 79 Pa. Superior Ct. 499; Com. v. Weber, 167 Pa. 153-162; Com. v. Ezell, 212 Pa. 293; Brumbaugh v. Raystown Water Power Co., 260 Pa. 365-366; Com. v. Zappe, 153 Pa. 498; Com. v. Peach, 170 Pa. 173; Com. v. Rothensies, 64 Pa. Superior Ct. 395, 256 Pa. 337; Com. v. Wilston, 73 Pa. Superior Ct. 161-164.

The third additional reason is, in our opinion, without merit; for, if we understand the argument advanced in the defendant's typewritten brief, the alleged error consisted in not charging the jury that the defendant must establish the bad character of Mary Marguerite Urick for chastity beyond a reasonable doubt before he can be relieved of the crime of statutory rape. Such a proposition is much more severe on the defendant than the law warrants.

The clause of the charge quoted by the exception should not be interpreted by itself. It must be remembered that Mary Marguerite Urick, although the alleged victim of the defendant in the alleged crimes, was not the prosecutor. The prosecution was brought by her father. The defendant had denied

4 D. & C.

that he ever had any carnal intercourse with Mary Marguerite Urick, and attempted to sustain his denial by evidence. The indictment charged bastardy, statutory rape and adultery. A part of his defence was to establish a general character or reputation for Mary Marguerite Urick of unchastity, and thus relieve himself of the charge of statutory rape and reduce the crime to fornication. This was a defence inconsistent with his sworn testimony that he had never had carnal connection with the girl, and the charge of the court on that part of the case was as fair to the defendant as it could have been. (See stenographer's transcript, pages 65 and 66.) It reads as follows: "The further attempt of the defendant was to show to you that the general reputation for chastity of Mary Marguerite Urick was bad, and for that purpose they examined quite a number of witnesses, ten or eleven, at least. You will remember the number and you will remember the witnesses. You will remember their appearance, what they testified to, how they testified, and especially the language they used in making the answers to the questions."

When the clause quoted in the third reason is read in conjunction with the above quoted part of the charge, it cannot be reasoned that the defendant was prejudiced. It would have been improper to have charged the jury that the defendant must establish the bad character of Mary Marguerite Urick for chastity beyond any reasonable doubt; but that is what the third reason requires. The law presumes that the reputation of Mary Marguerite Urick is good for chastity, and if it was bad, the defendant must show it to be bad (Com. *v*. Allen, 135 Pa. 483) before the jury can relieve the accused from the charge of rape. It is true that Dean Trickett has casually remarked, in his excellent work on Criminal Law in Pennsylvania, that if the evidence of the child's character leaves the jury with a reasonable doubt of her good character for chastity, they should acquit the defendant. We can find no ruling of any appellate court which goes that far when applied to the circumstances surrounding the exceptions advanced in the present case. The charge abounds with instructions to the jury that they should give every reasonable doubt to the defendant. The instructions as to the weight of the evidence were only incidental to the comparison of evidence given in refutation of other evidence given by the defendant against his alleged crime of rape to the extent of lessening the grade of that crime of rape to the crime of adultery.

The fourth additional reason is not founded upon fact. The jury was instructed early in the charge as follows (see stenographer's transcript, page 61) : "Whenever one comes into a court of justice charged with a crime, the presumption of innocence comes with him and rests as a cloak about him until the evidence produced is so strong that it satisfies the minds of the jurors beyond a reasonable doubt that he is guilty of the crime charged in the indictment. That reasonable doubt, the law means, is a doubt substantial, such as would cause you or any business man, in the transaction of his own business affairs, to pause. to hesitate and stop the transaction."

Again, on page 66, the charge continues: "Now, take all the evidence in detail, every part of it, because it is all conflicting. If you believe the Commonwealth's witnesses, you must necessarily disbelieve the defendant and all his witnesses. And if the Commonwealth's witnesses are believed by you to the extent that the effect of their evidence convinces your minds beyond a reasonable doubt, which I attempted to explain to you, of the guilt of the defendant, then your verdict should be rendered in accordance with the effect of that evidence. But if the evidence of the defendant raises such a reasonable doubt in your minds as to the guilt of the defendant, then, of course, you will have a reasonable doubt, and you will have to render a verdict of not guilty.

Commonwealth v. Mehring.

"There are three branches of this case—three separate crimes charged. You can analyze the whole situation as to the guilt of the defendant and the innocence of the defendant on each one of these charges. . . . If the defendant did have carnal intercourse with this woman child, and the evidence convinces you beyond a reasonable doubt that he did have, and her reputation for chastity was not bad, he committed the crime of statutory rape."

We feel that the jury was thoroughly and legally instructed on the advantages they should give to the defendant on reasonable doubt. The rule of weight and preponderance of evidence was only applied to the contest raised by the attempt to prove the bad character for chastity of Mary Marguerite Urick.

No points or requests were submitted for the trial judge to present to the jury, and no exceptions were taken to the charge.

The proper course in a criminal case is to except to error at the time and have a bill sealed: Haines v. Com., 99 Pa. 410; Fife et al. v. Com., 29 Pa. 429. There must be an exception noted to the charge before a verdict: Curtis v. Winston, 186 Pa. 492; Com. v. Arnold, 161 Pa. 320.

And now, Dec. 10, 1923, motion for new trial refused, and defendant ordered to be in court for sentence, Monday, Jan. 7, 1924, at 10 o'clock A. M.

From Richard E. Cochran, York, Pa.