*1814.*

RUSSEL
*v.*
SKIPWITH.

---

The Commonwealth *against* CORNISH.

THIS was an indictment of the defendant for perjury, in swearing before a magistrate of the county, " that " *Jacob Miley*, on the 8th *November* 1813, wilfully and " maliciously did shoot him the said *Cornish*, with shot out " of a gun."

He was tried before the Chief Justice and Judge *Bracken-ridge*, at a Court of Oyer and Terminer on the 15th inst., when it appeared, that on the night of the 8th *November* last, a great riot occurred in the *Northern Liberties*, at which several guns were fired. The prisoner was then shot in the face, and as one witness swore, immediately said, " *Jacob*

*Philadelphia,*
*Friday,*
*January 21.*

One who swears wilfully and deliberately to a matter that he rashly believes, but which he has no probable cause for believing, and which is false, is guilty of perjury.

" *Miley* has shot me." At this time the crowd was great, between one and two thousand persons being present, and the witness who knew *Miley*, took the person who fired the gun, from his size and dress, to be *Miley*, but was not sure. On the 10th *November*, *Cornish* charged *Miley* on oath before the magistrate, in consequence of which a warrant was issued, and *Miley* brought up on the 12th. *Cornish* was then again sworn, and repeated that *Miley* had shot him with intent to kill; that he knew him well, pointed to him, and said that *Miley* was a mutton butcher, of whom he had often bought mutton.

*Miley* produced unquestionable evidence, that he was about twenty miles from the *Northern Liberties* during the whole of the evening and night of the 8th *November;* and swore personally, that he did not know *Cornish*, nor did he recollect ever to have seen him until in the magistrate's office. He knew of no cause of enmity that *Cornish* could have against him.

The counsel of *Cornish* conceded the *alibi* of *Miley*, and rested the case on the defendant's mistaking another person for him. The Chief Justice told the jury, that if they should be of opinion that *Cornish* had any reasonable cause for mistaking the person of *Miley*, they ought to acquit him; but if it should appear to have been a rash and presumptuous oath, taken without any probable foundation, they ought to find him guilty, although he might not have been certain that *Miley* was not the person who shot him.

The jury found him *guilty*, and his counsel moved for a new trial.

*A. Coxe* for the defendant.

*E. Ingersoll* for the Commonwealth.

TILGHMAN C. J. after stating the case delivered his opinion as follows:

It is contended, that there can be no perjury where a man believes what he swears. But it appears to me that a position so extensive cannot be supported. He ought at least to have some probable cause for belief, unless the oath be taken under such circumstances of haste or surprise as afford no opportunity of deliberation. If a man undertakes to swear to a matter of which he has *no knowledge*, he is perjured, although what he has sworn turns out to be true. This is

proved by the case cited by the defendant's counsel from 3 *Inst.* 166, where a man was adjudged guilty of perjury for swearing to the value of goods which he never saw or knew, although his valuation was not incorrect. There is corruption in undertaking to swear positively to a thing of which you have little knowledge, and which you may know if you will take the trouble to enquire; and when there is this kind of corruption, the law implies *malice.* *Cornish* must have known that it was difficult to distinguish a man's person in a crowd in the night, and he ought to have made some enquiry before he took the oath. If he had acted with reasonable caution, he would have discovered the truth. It is objected that it may be of dangerous consequence, if witnesses are convicted for swearing to what they believe to be true. On the other hand, it will be more dangerous if they are to escape punishment, who rashly and obstinately persist in a false oath, in a matter of which they will not take the pains to inform themselves. It is said by *Blackstone,* 4 *Black.* 137, that there is perjury where one swears *wilfully,* absolutely and falsely. That the oath of *Cornish* was *absolute* and *false* is not denied. It was *wilful* also, according to the legal import of that word, by which it is only understood that the oath is taken with some degree of deliberation, and " not merely through surprise or inadvertency, " or a mistake of the true state of the question;" (3 *Bac.* 814, *A.*) Now here was great deliberation, or at least room for deliberation, for there was an interval of two days between the first and second oath, and the first was taken two days after the affray in which the defendant was shot. In cases where the oath is clearly false, I know no rule more reasonable, than to leave it to the jury to decide, whether there was any probable ground for mistake. I am therefore of opinion that a new trial should not be granted.

BRACKENRIDGE J. The question resolves itself into this, can one be guilty of perjury who believes what he says to be the truth? *Probable cause,* or *reasonable ground of belief,* in a prosecution in a course of justice, will exempt from damages. The want of probable cause or reasonable ground, *pari ratione* will subject to the conviction of perjury; for the *mala mens, malitia,* or malice, is an inference of law from

1814.

COMMON-
WEALTH
v.
CORNISH.

the want of probable cause or reasonable ground. I am not to be at the mercy of the *weakness* of a man, and the law will protect against the weakness, as well as against the *actual* wickedness of him, who attacks my reputation *by an oath in a court of justice.* It is the same thing to me, whether it was his weakness or actual malice and wickedness, that led him to take the oath. It interests the public, that rash and unadvised swearing a crime upon another, should be restrained; and how can this be done, if the only enquiry shall be, whether the weak man really thought that which he swore was true.

In the present case, it cannot be doubted, but that an action of slander could have been supported on words spoken to the effect of what was sworn, even though *believed* by him publishing. The being spoken in a course of justice will protect against this. The being sworn in a course of justice, will not protect on the ground of a *probable cause.* There was no probable cause in this case, no reasonable ground. The charge was rashly made, and wantonly persisted in, without throwing himself open to conviction of his *mistake,* or using due means to inform himself of it, though he would seem to have had abundant opportunity of making enquiry, and informing himself as to the ground of his misconception. The not having done this, shews a carelessness as to what he swore; and even when in court he persisted in his first belief.

We are between *Scylla* and *Charybdis* in this case. On the one hand, there is the risk of discouraging testimony given for the Commonwealth; on the other hand, there is the risk of individuals from rash and unadvised swearing. There can be no doubt but that an action for a malicious prosecution would lie in this case; but what satisfaction would it be to recover damages against a defendant of no property? It ought to be at a man's risk to undertake to swear positively, under circumstances where he ought to have mistrusted his vision, and could not have been certain, as to what he undertook to say positively that he saw. This was the case here.

New trial refused.