IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

~~~~~~~~~~~~~~~~~~~~~~~~

### NORTHERN DISTRICT—SUNBURY 1851.

~~~~~~~~~~~~~~~~~~~~~~~~

## Brooks *versus* Olmstead.

1. Though trespass will not lie against the owners of a drove on account of the driving off the heifer of the plaintiff by one in the employ of defendants; yet if the latter, knowing the animal to be the property of the plaintiff, or not having used the usual and proper precautions to ascertain that they had more cattle in their drove than their own, drive it away, they will be answerable in trespass for the injury done.

2. If the defendants afterwards purchase the animal from the plaintiff, but the question of damages for taking it off is reserved, such purchase will not be a bar to an action of trespass for the removal.

ERROR to the Common Pleas of *Bradford county*.

This was an action of trespass brought by Henry Olmstead against Thomas J. Brooks and Guy Tozer, before a justice of the peace, and brought into court by an appeal from the judgment of the justice. The plaintiff filed a special declaration in the court below for the taking and driving away a heifer, the property of the plaintiff, to which the defendants pleaded not guilty, and the cause came on for trial on the 13th of May, A. D. 1851. On the trial of the cause the defendants admitted that the heifer was found in their possession, but denied their liability as trespassers, alleging that the heifer was put into their possession without their

(24)

[Brooks v. Olmstead.]

knowledge or assent, and so continued in their possession, without their knowledge, till found by the defendants in error, when they purchased the heifer and paid for her; which was the material question in the cause.

Evidence on part of the plaintiff below:

Robert Sutton, called on part of plaintiff:—A year ago last September, I was called upon by Mr. Olmstead to go with him in pursuit of his heifer; I supposed she was in defendant's drove; we went in pursuit; followed them into Sullivan county, about forty miles; found her in the drove of Brooks and Tozer; the heifer had been kept in Athens township, running with his cattle; he had two cows; I had known the heifer; he (Olmstead) had no horse and buggy; I think we spent between two and three dollars; I judged the whole expense when the suit commenced to be about twelve dollars, including time; Brooks and Tozer were together; they did not pretend to have any claim to the heifer when we overtook them; Mr. Olmstead and I found the heifer among their cattle, and told them; and they said, "what shall be done?" I don't think they asked to have her pointed out.

Cross-examined by the defendants:—The drove was put up for the night in a field; in the conversation, they said they had one more than their complement, and she was a two year old, coming three; Tozer offered $15 for the heifer, and I think I said, *what about the damages?* and Olmstead, or somebody else, said, that was another matter; Tozer then said, I will give you three dollars for the damages; Olmstead said he could not stand that; Tozer told me I had best advise him to take it, that would make $18; Olmstead said he would take $5; Tozer said he would not give it, and Olmstead said they would settle that afterwards, or after they got home; Tozer said the heifer was not worth more than $12, and he was giving a great price for her; the talk about the damages was before and after he paid the $15; I cannot state the exact expression which Olmstead used when he said he would settle after he got home; I think the heifer was worth $15.

Benjamin Sawyer, sworn:—I knew the heifer of Olmstead; Mr. Brooks and Mr. Tozer called on me;—this heifer came along; I told them it was Mr. Olmstead's; they asked if I thought he would sell her; Olmstead had but the one heifer, that I knew of; it was a heifer that Olmstead had raised; at the time the heifer was passing in the road, not more than a rod or two from us, I think; if I recollect right, it was two, three, or four days before they drove their cattle off; they bought some cattle of me; bought one heifer of me; I think Charles Brooks came up and got the cattle.

Plaintiff closed.

Evidence was given on part of defendant, and Robert Sutton was recalled on the part of the plaintiff.

Robert Sutton recalled:—I was with them at the wagon; I

[Brooks *v.* Olmstead.]

went with them from there to the house; as we were going into the house, Tozer said he would give Olmstead $3 more, and that would make $18, and settle the damages, and said I had better advise Olmstead to take it; after we went into the house, Olmstead said he could not stand that, and offered to take $5; Tozer said he would not give that; Olmstead said they would settle that afterwards.

The counsel for the defendants asked the Court to charge the jury,

1. That if the jury believed that the heifer in question came into possession of the defendants by the act of their servant, without their knowledge or assent, and continued in their drove without their knowing that the heifer was among their cattle, trespass will not lie, and the plaintiff cannot recover in this action.

2. That Olmstead having sold the heifer to the defendants, and assented to settle the damages with the defendants after their return home, could not maintain this action of trespass.

Charge of WILLISTON, J., to the jury:—

" This is an action of trespass brought by the plaintiff against the defendants, to recover damages for the driving away his heifer.

" The counsel for the defendants contend that if the heifer was brought into their drove and possession without their direction or knowledge, and that they drove it away, not knowing it to be in their drove, they cannot be prosecuted as trespassers, and this suit cannot be maintained.

" The Court are of opinion, and so direct you, although the taking of the heifer by Charles Brooks, their agent, and driving her to John Watkins, and their putting her in the drove with their cattle, if without their knowledge, would not make them trespassers; yet if they took possession of the heifer with their other cattle, and drove her away from Watkins, in Athens, to Sullivan county, where they were overtaken by plaintiff, as testified by Sutton and others, *they might be treated as trespassers, and their want of knowledge that the heifer was brought into the drove would not bar the plaintiff's right to recover in this case.*"

It was assigned for error:—

1. The Court erred in saying to the jury that the defendants might be treated as trespassers, although the heifer came to their possession *without their knowledge or assent, and that their want of knowledge that the heifer was in their possession, would not bar the plaintiff's right to recover.*

2. That the Court erred in saying that the plaintiff could maintain trespass under the evidence in the case.

The case was argued by *H. W. Patrick* for plaintiff in error.—

[Brooks v. Olmstead.]

Many authorities declare that trespass cannot be maintained against a person receiving property from a trespasser; but trover or replevin after demand is the remedy: 3 *Hill* 350; Basset *v.* Warren, 1 *Wend.* 109; 19 *Wend.* 431; 4 *Barn. & Adol.* 614; 11 *Johnson* 382; 8 *Wend.* 125.

*J. C. Adams,* for defendant in error.—The argument of the plaintiff in error is that Brooks and Tozer, in merely receiving the heifer from their agent, are not liable as trespassers. This is the purport of the case in 8 *Wend.* 474, and the other authorities cited, in all of which the person receiving the property did not interfere with it after it was delivered to him, and afterwards did no act himself amounting to a trespass. The putting the heifer in Watkins's field by plaintiffs' agent without their authority, would not make them trespassers. But Brooks and Tozer took her thence themselves and drove her into Sullivan county. This is the trespass laid in the declaration. This was their own act; it was their business to know their own cattle, and if they drove away Olmstead's heifer, they are trespassers, whether it was done intentionally or not, and no matter how the heifer got into their drove. All the authorities agree that the intent or design of the wrong done is immaterial in this action, 1 *Camp.* 497, 2 *Camp.* 465, 1 *Ch. Pl.* 120: for where the act occasioning an injury is unlawful, the intent of the wrong doer is immaterial: 6 *East* 464, 473: 2 *East* 107. And it is clear the mind need not concur in the act that occasions an injury to another, for if the injury is immediate, trespass is the proper remedy without reference to the intent: 8 *T. R.* 190. And where defendant has been acquitted of a felony, he may be sued for a trespass: 12 *East* 400.

There are many other cases in the books, where the injury being direct and immediate, trespass has been holden to lie though the injury were not intentional, as in Weaver *v.* Ward, *Hob.* 134, where the defendant exercising in the train bands and firing his musket, accidentally hurt the plaintiff; and if one turning round suddenly, were to knock another down whom he did not see, without intending it, no doubt trespass would lie: 3 *East* 595. If any degree of blame attached to defendant, he is liable in trespass although he be innocent of any intention to injure, as if he drive a horse too spirited, or pull the wrong rein, or use imperfect harness, and the horse taking fright, kills another horse: Wakeman *v.* Robinson, 1 *Bingh.* 213; or accidentally drive his carriage against that of another: Leary *v.* Bray, 3 *East* 599. That it is not necessary the injury should be wilful or intentional, and that a party is liable for injuries arising from accident and mistakes, &c., &c. See Jennings *v.* Fendenberg, 4 *McCord* 161; Hobart *v.* Hagget, 3 *Fairfield* 67; Underwood *v.* Hewson, 1 *Stra.* 596; Dolph. *v.* Ferris, 7 *W. & S.* 370; Paff *v.* Slack, 7 *Barr* 254; Bears *v.* Ambler, 9 *Barr* 193.

[Brooks *v.* Olmstead.]

The opinion of the Court was delivered July 21, 1851, by

COULTER, J.—It is, no doubt, true that one who comes to the possession of goods by delivery, and who has been guilty of no fault on his part, although it may turn out that the person who made the delivery to him had no title himself and was a wrong-doer, yet the receiver, guilty of no fault, cannot be treated as a trespasser. For, in such case, he has done no act which aided in depriving the true owner of his property. He, nevertheless, holds the property for the true owner, who may recover in trover, if the recipient of the property has converted it to his own use; or he is liable in replevin. So it may be stated, safely, that he who buys property from a trespasser, without any knowledge whatever of the original trespass, cannot be treated as a trespasser himself; because he has been guilty of no fault, nor assisted in any way in depriving the true owner of his property. And this is the general import of the cases cited from the New York books of reports. The law is correctly enough expounded in those books, and accurately stated. Indeed, the court below, in this case, seem fully to acknowledge this principle. But, before testing the accuracy of the opinion of the court below, we must look at the exact case which was before them. Two drovers, Brooks and Tozer, purchased a drove in Bradford county, and had them collected, as is customary, by their agents, at the field of one Watkins. Among the cattle driven into that field was the heifer or cow about which this dispute originated, which heifer the defendants never did purchase, nor had they paid anything for it, either by themselves or their agents. Before they drove off the cattle from Watkins's field, it appears distinctly from the testimony of one of their agents, that they knew there was one beast more than their number, or than they had purchased. One of the witnesses, however, Benjamin Sawyer, testifies, that four days before the cattle were driven off, Brooks and Tozer called on him, and he stated to them that he knew Olmstead's heifer, and pointed her out; they then asked him if he thought Olmstead would sell her.

The counsel for the defendant requested the court to charge the jury, that "if the heifer in question came into possession of the defendants by the act of their servant, without their knowledge or assent, and continued in their drove without their knowing that the heifer was among their cattle, trespass would not lie." The court answer that "although the taking of the heifer by Charles Brooks, their agent, and his driving her to Watkins's, and there putting her into their drove of cattle, if without their knowledge, would not make them trespassers; yet if they took possession of the heifer with their other cattle, and drove her away from Watkins's in Athens, to Sullivan county, where they were overtaken by plaintiff, they might be treated as trespassers, and their want of knowledge that the heifer was brought into their drove would

[Brooks v. Olmstead.]

not bar the plaintiff's right to recover in this case." This answer is a little indistinct; but substantially, it answers the point of the defendants quite as favorably as the law allowed. For it was the duty of the defendants, before they became the actors in depriving the plaintiff of his property, by driving it far away, to take the usual and proper precautions to ascertain whether they had more than their own. I believe it is the universal custom for drovers before they start off with their drove, to count their cattle—a custom dictated by their own interest, in order that they may know whether they have all they purchased; as well as by a due regard to the interest of others, in order that they may know that they do not take away the property of other people.

Were the defendants then not in fault? Surely they were. For it will not do to allow any person the privilege of alleging his own recklessness, carelessness, or negligence, as an excuse for depriving another man of his property or rights. A man may be guilty of a high crime, if he rashly and recklessly, without proper precaution, does an act which injures another, although he does not intend to commit the crime or actually knows that he is doing so. Com'th. v. Cornish, 6 *Binney* 249. *A fortiori* he may be guilty of a trespass. If the law were held otherwise, farmers and people in villages where cattle are allowed to run at large, would be exposed to great trouble and expense in regaining their cattle, driven off by the agents or servants of drovers. Because in the action of trover, if they were driven to that, the measure of damages would be the value of the goods and chattels at the time of demand with interest, which would be no compensation for the loss of time, the expense and trouble in pursuing cattle to a great distance. When the plaintiff followed the defendants, in pursuit of his property, into Sullivan county, the defendants, when overtaken, admitted the right of property in the heifer to be in plaintiff, and offered to buy her. The plaintiff finally agreed to take $15 for the heifer, but they could not agree as to the amount of damages for expenses and trouble in following after the heifer, and at last it was agreed that sum should be settled when the drovers returned from the sale of their drove. It does not appear that the defendants, after their return, made any attempt to settle or pay the damages, and the plaintiff brought this action of trespass.

The counsel for defendants submitted a second point to the court as follows : " That Olmstead, having sold the heifer to defendants, and assented to settle the damages with the defendants after their return home, could not maintain this action of trespass." The counsel for plaintiffs in error contends that the court did not answer this point. It is true they did not answer it separately and distinctly; but it was substantially answered by the instruction to the jury, that the defendants below might be treated as trespassers, and that the action would lie. The point, however, wants substance,

[Brooks *v.* Olmstead.]

and if answered directly against the plaintiff there would not have been error.   Taking pay for the heifer and expressly reserving the question of damages, left the matter open, and did not purge or wipe away the action of trespass.   The wrong was not atoned for or satisfied; and the original action remained as well by the understanding of the parties, as by operation of law.

I do not well see what other action would lie for the enforcement of these damages under the circumstances.

We are of opinion that the action of trespass was maintainable.

Judgment affirmed.