## Case No. 15,803.

### UNITED STATES v. MOORE.

[2 Lowell, 232.] [1]

District Court, D. Massachusetts. April, 1873.

#### FALSE SWEARING—SCIENTER—AFFIDAVIT.

1. False swearing, under St. March 1, 1823, § 3 (3 Stat. 771), is committed by knowingly swearing falsely to any material fact, though that fact be only the witness's belief of a material fact. But it is not committed by rash or reckless swearing.

[Cited in U. S. v. Edwards, 43 Fed. 67.]

2. A defendant made affidavit that a certain treasury note, of which he produced a fragment, had been nearly all destroyed on a certain day, which was not true in fact. There was some evidence from which the jury might have inferred that the defendant, though rashly, believed the fact to be as he stated it. The indictment charged that the defendant made the statement knowing it to be false. *Held,* the jury should be asked to find whether the defendant made the statement knowing it to be false; and that a further instruction, that the offence would be made out by showing that he swore to personal knowledge of the fact, when he knew he had no such knowledge, was erroneous, because there was no evidence that he had sworn to such knowledge.

3. An affidavit to the existence of a fact does not import that the affiant has personal knowledge thereof, unless so stated, or the fact be of such a character that he must have personal knowledge.

[Cited in Steagald v. State (Tex. App.) 3 S. W. 777.]

4. Whether a written affidavit contains such a statement, is a question of law, and should not be left to the jury.

U. S. v. Atkins [Case No. 14,474], examined and explained.

The statute of March 2, 1863, § 1 (12 Stat. 696), is, that any person in the land or naval forces of the United States, or in the militia in actual service in time of war, who shall make, or cause to be made, any claim upon the government of the United States, knowing such claim to be false, fictitious, or fraudulent, or who shall, for the purpose of obtaining payment of any such claim, make any false . . . statement, certificate, affidavit, or deposition, knowing the same to contain any false or fraudulent statement or entry, or any false oath to any fact, statement, &c., may be tried by court-martial, and be punished. Section 3 authorizes the punishment by any court of competent jurisdiction of any person not in the military or naval forces, who shall do any of the acts prohibited by the foregoing provisions of the act. The act of March 1, 1823, enacts, that if any person shall swear falsely in support of a claim against the United States, he shall, upon conviction thereof, suffer as for wilful and corrupt perjury. 3 Stat. 771.

The second count of the indictment charged that the defendant [Michael Moore], on a certain day, at Boston, made a false and fraudulent claim against the United States, for the redemption of a certain treasury note of the denomination of fifty dollars, issued under a certain statute, set out by its title and date; and, for the purpose of obtaining payment of said false and fraudulent claim, the defendant caused to be presented to the treasurer of the United States a fragment of said note, and did make representation in writing that said note was, on or about the 17th of March, 1871, nearly all destroyed, which was false; that said note had never been destroyed, but had been redeemed; that the defendant, in support of his said claim, did make a certain declaration in writing of the following tenor. There is then set out, in full, the alleged false statement concerning the destruction of the note. And it is further alleged, that the defendant, well knowing that the said declaration was false, did subscribe it, and make oath to its truth, at Boston, before Charles H. Fleming, a justice of the peace, empowered to administer an oath in this behalf. It set out the matter in which the statement was false, and that the defendant well knew it to be so; that the matters so sworn were material for obtaining payment of said note; and concluded: "And so the jurors say, that the defendant did knowingly swear falsely in support of a claim against the United States, before Charles H. Fleming, a justice," &c. This count was drawn under section 3 of the act of 1st March, 1823, ubi supra.

The evidence tended to show that a considerable number of notes like the one in question in this case had, after their redemption by the treasury, been mutilated by some person in the employ of that department, by cutting out the vignette. It was not shown that this was done with any fraudulent purpose, or that any injury had in fact been intended, or had resulted, to the government, or that the defendant knew these facts; nor was there any testimony tracing this fragment from Washington to Boston. A boy, who lived near the defendant at South Boston, testified that he picked up the fragment on the street on a day when there had been a procession and a fight; that he gave it to his father, to see if it was of any value. The father testified that he gave it to the defendant, for the same purpose; and he said he supposed the remainder of the note had been destroyed in the fight, and he thought he told the defendant so. The truth of this story was denied by the government. Upon the affidavit being presented at Washington, the fact was at once discovered that the note had been redeemed long before.

The jury found the defendant guilty on the second count; and he moved for a new trial upon several rulings, which had been duly reserved, but are not necessary to be here referred to, and upon one part of the charge, which is recited in the opinion of the court.

---

[1] [Reported by Hon. John Lowell. LL. D.. District Judge, and here reprinted by permission.]

E. P. Nettleton, Asst. Dist. Atty.
I. W. Richardson, for defendant.

LOWELL, District Judge.  I have made up my mind that my instruction to the jury upon one point was not sufficiently full and explicit, and may, perhaps, have misled them, to the injury of the defendant.  I charged in the words attributed to Judge Sprague, in U. S. v. Atkins [Case No. 14,474], "that the jury must be satisfied that the defendant swore to a declaration which, at the time, he knew to be false; and that may be either by swearing to a fact which he knows is not true, or by swearing to his knowledge of the fact when he knew he had no such knowledge." There appears to be a much fuller report of the charge in that case, from which, and from an examination of the records of the court (volume 39, p. 696) I find that there was but one trial of the action, and that there was a count for perjury, and one for false swearing, under the statute of 1823, which is the law on which the second count proceeds in this case and on which the report in the Law Reporter [2] says the government relied in that case.  It seems, therefore, that the authority is fully in point; but, by the more ample report of it, I find that the learned judge explained his meaning carefully, giving very full examination to the point whether the defendant had intended to state the fact as being within his own knowledge.  Even with these explanations, I do not regard the ruling as being precisely accurate, as I will hereafter explain.

There is some difference of opinion in the United States as to whether perjury, or false swearing in the nature of perjury, can be committed by mere rash and reckless statements on oath; and though my charge, rightly understood, did not authorize the jury to convict the defendant, if the evidence only showed recklessness, yet I am not sure it may not have been understood in that sense. Indeed, I think my own views were not quite distinct upon the point.  Mr. Bishop, in his treatise on Criminal Law (3d Ed., vol. 1, § 396), says: "Probably the better opinion is, that perjury is not committed by any mere reckless swearing to what the witness would, if more cautious, learn to be false; but the oath must be willfully corrupt." In a note, he quotes, as opposed to his own opinion, an extract from a report of the penal code commissioners of New York: "An unqualified statement of what one does not know to be true is equivalent to a statement of that which one believes to be false." The latter proposition may be nearly true, so far as the effect of the statement on others is concerned; but it is not a sound legal definition of perjury.  I agree, rather, with Mr. Bishop's opinion, that there must be some fact falsely stated, with knowledge of its falsity, before there can be perjury.  It has been

held, indeed, by an able and learned court, that rash swearing, without any reasonable or probable cause of belief of the fact sworn to, is perjury.  Com. v. Cornish, 6 Bin. 249. That was a case in which the defendant had been wounded in a riot, at night, and had sworn to the prosecutor as the person who wounded him.  The doctrine was denied to be law, in an able and careful charge to the jury in the circuit court of the United States, sitting in the same state.  U. S. v. Shellmire [Case No. 16,271].  It has been virtually denied in this state, in Com. v. Brady, 5 Gray, 78, where the defendant swore that he saw a man running from a burning building, whom he believed to be A.  The judge charged in the language of the court in Pennsylvania, and the ruling was set aside.  The court, to be sure, put their decision upon the ground that the defendant only swore to his belief; but personal identity is almost always a matter of belief.  An affidavit or statement, that I saw a certain person, does not usually import any thing more than that I saw some one whom I believed, and still believe, to be that person.  If I saw no one, or if I believed the person to be different from him I have named, it is perjury; but not otherwise.  If any material circumstance is falsely stated, such as that the witness was present, and heard a certain conversation, it has been held to be perjury if he were not present, though the conversation really occurred.  People v. McKinney, 3 Parker, Cr. R. 510.  In such a case, the materiality of the circumstance would be the only question. Granting the materiality of the fact, whether it be a statement of knowledge, or of information or belief, or a simple statement of a fact, if the witness knows that the fact is not so, or that he has no such information, or no such belief, he is guilty.  But if he only swears rashly to his belief of a matter of which he does not profess to have personal knowledge, the jury cannot be permitted to decide on the reasonableness of his belief, except as tending to show whether he did believe.  In short, perjury is always of some matter of fact; and belief may be a fact.  In this case, the only questions of fact put in issue by the indictment and by the law are: Was the statement false? and, Did the defendant know it to be false? In this respect, it is like the offence of passing a counterfeit note, knowing it to be counterfeit.  Proof of reasonable cause of belief may warrant a jury to find knowledge; but it is not the legal equivalent of knowledge.

It was proved that the defendant made oath to the statement set out in the second count; but it does not expressly appear by the paper itself that he professed to have personal knowledge of the fact.  If he only intended to state his belief, there were some circumstances sworn to, which, whether satisfactory to the jury or not, were proper to be considered by them on the question of

---

[2] [Also reported as part of Case No. 14,474.]

belief. There was some evidence that the fragment of the note was picked up in the street on St. Patrick's Day, and that the father of the boy who found it gave it to the defendant, and suggested to him that perhaps the note had been torn up in a riot or street fight that took place then and there. In the case of U. S. v. Atkins, ubi supra, the false oath was, that a certain shipping paper was the original agreement with the crew; and the evidence tended to show that the defendant knew nothing whatever about it personally. The form of the oath, as in this case, was positive, without saying any thing about knowledge, or means of knowledge or belief. Judge Sprague, in charging the jury, said: "Did the defendant, by swearing positively, mean to swear that he had personal knowledge that it was the original agreement? The defendant could not swear that it was the original agreement, unless he was present when it was made. All else would be information and hearsay. The question is: Did he mean to make the collector understand that he had knowledge it was the original contract; or did he merely mean to swear that it was such to the best of his knowledge and belief? The matter for you to decide, gentlemen, is, whether you are satisfied that the defendant, in order to deceive the collector, wilfully and intentionally swore to what he knew was false, either as to the agreement being genuine, when he knew it was not, or to his knowledge of the fact, when he was conscious he had no such knowledge." Now, this ruling is undoubtedly sound in the abstract, and it is what I told the jury; but the difficulty in my mind is, that there was no sufficient evidence in the case from which they could infer that the defendant did state the destruction of the note to be within his personal knowledge; and therefore I should not have brought that secondary fact to their notice at all. And here I differ from the charge in Atkins' Case. The ruling in that case, with all the limitations and qualifications which it appears that Judge Sprague put about it, would probably do no harm; but I must say that in my opinion the learned judge should have ruled, on an affidavit wholly in writing, that it did or did not, as matter of law, import a statement of personal knowledge, and not have left that question to the jury. In that case the jury were unable to agree. In the similar case of U. S. v. Smith [Case No. 16,336], they acquitted the defendant. The court and jury in those cases agreed that an affidavit to a fact does not necessarily include an affirmation that the affiant has personal knowledge of the fact; and my own observation of the conduct and opinion of men in general in this matter agrees with that view. I consider the affidavit in this case ought not to be held to import such a statement, none such being expressed, and the fact not being one which was personal to him. The true question, therefore, for the jury was the one which the indictment points out: Did the defendant swear to this fact, knowing it to be false? I do not mean to say that there was not evidence from which the jury might have answered this question in the affirmative; but, as I cannot say how they would have answered it, I feel it to be my duty to grant a new trial.

New trial ordered.