## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### October 3, 1919.

## THE PEOPLE v. EDWARD BISHOP REDMOND.

### (189 App. Div. 96.)

PERJURY—TESTIMONY GIVEN ON INFORMATION OBTAINED FROM OTHERS—FAILURE TO SHOW CRIMINAL INTENT—VERDICT AGAINST WEIGHT OF EVIDENCE.

To constitute the crime of perjury not only must the testimony be false but the witness must know it to be false and must testify willfully.

Although a witness testified to facts as of his own knowledge, which he afterwards admitted he had learned from the statements of others, so that it was equivalent to a statement of what he knew to be false by virtue of section 1626 of the Penal Law, nevertheless he cannot be convicted of perjury without proof that the testimony was willfully given, i. e., with a criminal intent. If the witness believed what he had been told, his testimony, although false, was not willfully so, and, therefore, not perjury.

Evidence examined, and held, that a verdict convicting the defendant of perjury was against the weight of evidence.

JAYCOX, J., dissented.

REARGUMENT of an appeal by the defendant, Edward Bishop Redmond, from a judgment of the County Court of Kings county, rendered against him on the 27th day of November, 1916, convicting him of the crime of perjury, and also from

an order denying defendant's motion for a new trial and an arrest of judgment.

*A. F. Van Thun, Jr.,* for the appellant.

*Ralph E. Hemstreet, Assistant District Attorney (Harry E. Lewis, District Attorney,* and *Harry G. Anderson, Assistant District Attorney,* with him on the brief), for the respondent.

BLACKMAR, J.:

In the June term of 1917 the judgment of conviction herein was reversed by this court for an error in the charge, and a new trial ordered.    (179 App. Div. 905.)    At the same time, on motion of the People, the order of reversal was resettled to recite that the reversal was on law only, as the court had not reached an agreement on the facts.    (179 App. Div. 127.) The People appealed to the Court of Appeals and that court, in January, 1919, decided that an appeal to it would not lie unless it affirmatively appeared in the body of the order that the Appellate Division had exercised its power to review the facts and that, being satisfied with the judgment in that respect, the reversal was ordered for errors of law only.    The appeal was dismissed but without prejudice to a new application to the Appellate Division for the amendment and resettlement of the order by stating in it its decision upon the weight of evidence.    (225 N. Y. 206.)    Such application was thereupon made; and as two of the justices who sat when the court passed on the case were no longer members of the court, a reargument of the whole case was ordered.    It, therefore, became and is incumbent on us to consider both the facts and the law.

The defendant was indicted and convicted for perjury.    In an action for partition pending in the Supreme Court, there was an issue of the legitimacy of Beatrice Barker, a defendant in that action.    That issue in turn depended on whether her mother, now named Estelle Dorgeloh, was married to one

Alphonsus Murtha, or Murtagh, at the time of her marriage to Charles Barker, the father of the said Beatrice. An issue of fact was framed for trial by jury as follows: "Was the defendant, Estelle Dorgeloh, and the mother of the defendant, Beatrice Arabelle Barker, then known as Estelle Whitney, married on or about May 1, 1897, to Alphonsus Murtha or Murtagh?" The issue came on for trial before a court and jury. Complete proof was offered of a ceremonial marriage before a minister of the gospel on the date specified. The fact was not contested, as defendant Dorgeloh claimed that the ceremony did not effect a marriage. That contention was overruled by the presiding justice, who excluded evidence offered to show that the ceremony was not intended to effect a marriage and directed the jury to bring in a verdict answering the question in the affirmative. This the jury did after protest, resulting from evident disinclination to render a verdict that tended to bastardize the innocent defendant Beatrice.

The defendant Redmond, called as a witness for defendant, testified that on the 1st of May, 1897, at his mother's house in Degraw street, Brooklyn, he met defendant Dorgeloh, then known as Estelle Whitney, and Alphonsus Murtha; that Estelle Whitney then and there said that she had been married to Murtha; that on the 30th of November, 1914, he accompanied the counsel for the defendant to Somerville, N. J.; that there he saw Murtha, who was the same man that he saw in his mother's house on the 1st day of May, 1897. Upon this testimony he was indicted and convicted for the crime of perjury.

In considering the weight of the evidence it is well to keep in mind certain established facts. On the 1st day of May, 1897, Estelle Whitney was fifteen years of age and the defendant Redmond eleven. She was then staying temporarily at the house of Redmond's mother, and it is in evidence and not denied that the intimacy of the girl and the little boy was so great that they slept together in the same bed. A ceremonial

marriage was on that day performed between the girl Estelle and Murtha, and after the ceremony Estelle did return to the home of defendant's mother.    It seems to me, therefore, that it is in the highest degree probable that she did speak of the marriage, at which an aunt of defendant was a witness, so that it was no secret.    An analysis of the indictment, the evidence taken at the trial and the charge of the court show that the issues litigated were whether perjury had been committed in three particulars, *i. e.,* in testifying that the witness remembered seeing Murtha at his mother's home on May 1, 1897; that Estelle Whitney was with Murtha and there stated that she had been married to him; and that seventeen years afterwards defendant recognized Murtha as the same man he saw in 1897.    The real question in the case is whether the evidence justified the jury in finding as facts all the elements of the crime in the testimony of defendant that Estelle Whitney said on May 1, 1897, in the home of defendant's mother, that she had been married to Murtha; for the testimony that Murtha was present or that defendant recognized him at Somerville, N. J., is incidental matter not material to the issue.    To constitute the crime of perjury, not only must the testimony be false, but the witness must know it to be false and must testify willfully.    (Penal Law, § 1620.)    The evidence that the statement was not made is that of Estelle Dorgeloh only.    The contest over the infant Beatrice's legitimacy was exceedingly bitter, and the mother, Estelle, appears to have been in a state of almost frantic excitement over it.    One expression of hers on the witness stand indicates her state of mind, *i. e.,* " Defend my child's honor ?    To the end of the earth.    It is my duty." She was incensed with every one on the other side of the civil action, among whom she counted the defendant and the counsel. The question whether she uttered the words on May 1, 1897, that she had been married to Murtha, was not definitely and clearly presented to the jury; and if it could have been dissociated from the emotional elements in the case and left to

the jury, I doubt if they would have found that she did not use them, upon her evidence alone, in view of the probability that she did and of the contradictory testimony of the mother and aunt of the defendant and the defendant himself. The evidence that undoubtedly had the greatest weight in securing conviction is directed to the question whether the defendant Redmond, who was twenty-nine years of age at the time he gave the testimony for which he was convicted, and eleven years of age on May 1, 1897, really testified from memory or from suggestion. It seems to be assumed, and I think erroneously, that if his testimony was from suggestion it was knowingly and willfully false. Estelle Dorgeloh and her counsel went to see Redmond, and Mrs. Dorgeloh, playing upon his sympathy for the infant Beatrice, whose legitimacy was in question, induced him to go to the counsel's office, where he was subjected to cross-examination, both by the witness Dorgeloh and counsel, and during its progress an affidavit was dictated to stenographers, which, after it was written out, Redmond signed, and which was produced against him at the trial. As the purpose of the interview was to obtain a retraction of his evidence, it may fairly be assumed that the affidavit, formulated by a hostile lawyer, states the substance of what he said without mitigation in his favor. In so far as the affidavit contradicted the testimony, it presumptively established its falsity. (Penal Law, § 1627.) The affidavit did not contradict the *facts* that the defendant testified to, but in artificial language disclaimed recollection, or, as the words are twice used, *independent* recollection, of the occurrences regarding which he testified. He states that he was told these facts by Clifford Barker and his mother, but not that he did not believe them. The effect of the affidavit is that his testimony was based on statements made to him by his mother and Clifford Barker. In other words, that he testified as within his own knowledge to facts that he did not know to be true. Section 1626 of the Penal Law provides: "An unqualified statement

·of that which one does not know to be true is equivalent to a statement of that which he knows to be false." The affidavit presumptively established that the defendant testified to that which he did not of his personal knowledge know to be true. His statement of that which he did not know to be true was, therefore, by the provisions of this section, made equivalent to a statement of that which he knew to be false. But that is not enough. By the wording of the definition of perjury (Penal Law, § 1620) the testimony must be willfully given, i. e., with a criminal intent. (People ex rel. Hegeman v. Corrigan, 195 N. Y. 1, 23 N. Y. Crim. 242.) If the defendant believed what his mother and Clifford Barker told him, his testimony, although false, was not willfully so, and, therefore, not perjury. (People v. Dishler, 38 Hun, 175.) Our experience in the trial of cases teaches us that witnesses often honestly testify to facts that on cross-examination turn out to be not within their personal knowledge but based on statements of others or on conclusions that they drew from other facts. The effect of suggestion on an uneducated boy of eleven years is well known. He knows nothing of the rule of evidence excluding hearsay. If induced by suggestion to believe that a fact exists, he does not hesitate so to testify, and a statement that he did not recollect the fact, or had no independent recollection of it, without evidence that he did not believe it to exist and therefore, willfully testified, falls short of the legal requirements. I think the probabilities are that the facts to which he testified did exist and that when he testified he believed them to exist. It is true that a witness may be guilty of perjury in testifying that he does or does not remember a given fact (People v. Doody, 172 N. Y. 165, 17 N. Y. Crim. 69); but that such testimony is willfully given is an element of the crime that must be established beyond a reasonable doubt. In this respect I think the verdict was against the weight of evidence.

It is unfortunate that just at the close of the trial purely hearsay evidence, competent if at all only for the purpose of

impeaching a witness, was given and repeated, to the effect that some member of the Barker family had offered to use large sums of money for the purpose of securing evidence of the marriage of Estelle Whitney and Murtha. In view of the conclusive proof of the marriage by the testimony of the clergyman and a witness to it, and of the public records, the suggestion that any member of the Barker family was resorting to such methods to secure evidence of negligible value is incredible. However, the jury, which often does not appreciate the distinction between hearsay evidence, offered for the purpose of impeachment, and direct evidence on the issues, would in their minds connect this evidence with the testimony given by the defendant, on which he was convicted, and thus was created an unfavorable medium through which they viewed the evidence given on the trial of this action.

It is a question whether, in view of the evidence adduced on the trial, the affidavit, considering the way in which it was obtained, although it presumptively established the falsity of the testimony, was sufficient as a basis of conviction; but I prefer to place the decision that the verdict was against the weight of evidence on the ground of the insufficiency of the evidence to show that the testimony was willfully given.

The judgment of conviction should be reversed upon the facts as well as the law, the order of reversal settled accordingly, and a new trial ordered.

JENKS, P. J., MILLS and RICH, JJ., concurred; JAYCOX, J., dissented.

Judgment of conviction of the County Court of Kings county reversed on reargument upon the facts as well as the law, the order of reversal settled accordingly, and a new trial ordered.