## Commonwealth v. Baltosser.

*Robert T. Fox*, District Attorney, and *Michael E. Stroup*, for Commonwealth.
*W. Justin Carter*, for defendant.

HARGEST, P. J., March 26, 1930.—The defendant was tried on nine indictments for perjury and found guilty, Jan. 24, 1929, on three of them. Whereupon motions in arrest of judgment and for a new trial were filed and argued Jan. 8, 1930.

The indictment in this case was, in part, as follows:

"That George W. Baltosser . . . did unlawfully, wilfully, corruptly and falsely swear before Hon. William M. Hargest . . . at a session of the Court of Quarter Sessions of the Peace, in and for the County of Dauphin . . . in a judicial proceeding . . . wherein one Luther G. Smith was charged with having committed the crime of uttering a forged instrument, entered to No. 152 September Sessions, 1924, the said oath being duly administered . . . by Harry M. Fairchilds . . . Clerk of the Court of Quarter Sessions aforesaid . . . and it being . . . material . . . to ascertain and determine the genuineness of the signatures of the said George W. Baltosser . . . to certain written instruments . . . offered and presented at said trial as standards for com-

parison with the disputed signature 'George W. Baltosser,' upon the judgment note alleged to be false, to know and assist in knowing whether or not the said Luther G. Smith committed the crime of uttering a forged instrument, . . . the said George W. Baltosser did knowingly, unlawfully, wilfully, corruptly and falsely depose, swear, say and give in evidence upon oath as aforesaid in substance and to the effect following, that is to say, that the signature 'George W. Baltosser' attached and affixed to . . . an assignment of life insurance policy dated the 13th day of August, A. D. 1921, from George W. Baltosser . . . in favor of the Brotherhood Relief and Compensation Fund, Inc., . . . assigning the policy of insurance known as No. 7589746 issued by the New York Life Insurance Company on the life of George W. Baltosser . . . and known and designated upon the trial of the issue as 'Defendant's Exhibit No. 3,' was not the genuine signature of him, the said George W. Baltosser, whereas, in truth and in fact the said George W. Baltosser then and there well knew that the said signature, 'George W. Baltosser, . . . was genuine and in the own proper handwriting of him the said George W. Baltosser."

At the trial it appeared that the defendant was a member of the board of directors of the Brotherhood Relief and Compensation Fund, and Luther G. Smith was its president; that the directors concluded to use money of the corporation to purchase homes for themselves; that the defendant borrowed $5500 from the organization but ostensibly through Luther G. Smith's name; that the defendant purchased the home of Luther G. Smith; that subsequently there was found on the records of this court a judgment note, dated April 2, 1922, for the $5204, payable six months after date to the order of Luther G. Smith, which purported to be signed by "George W. Baltosser" and "Mrs. Virginia Baltosser;" that defendant brought in this court a criminal prosecution against Luther G. Smith, charging the latter with forging and uttering this note. There were two trials in this court, one before Hon. C. V. Henry, specially presiding, in January, 1925, in which Smith was found not guilty of forging but guilty of uttering. Judge Henry found it necessary to grant a new trial. The case was subsequently tried before the writer upon the issue of uttering, and Smith was acquitted, the costs being divided between the prosecutor and defendant. Thereupon these prosecutions were brought, charging the defendant with perjury as to a number of signatures, and he was convicted upon the indictment now before us and in two other cases.

At the trial a motion was made to quash the indictment, which was overruled, and, after the verdict, there was a motion in arrest of judgment. The reasons assigned in this motion are that the indictment is uncertain because (a) it charges the offense to have occurred "on or about, to wit, the 27th day of June," 1927; (b) it did not state with particularity the testimony alleged to be false; (c) the averment that the defendant swore "in substance and to the effect following" was a conclusion and did not sufficiently advise the defendant of the testimony alleged to be false.

All of these reasons are highly technical. Courts ought not to adhere to unimportant technicalities in criminal proceedings. We have been trying to free the administration of justice from them for more than a century. In Com. v. Keenan, 67 Pa. 203, 206, Mr. Justice Agnew said:

"The strictness of criminal pleading has found its greatest rigor and its highest reason in a country where, in the time when Sir William Blackstone wrote, one hundred and sixty offenses were punishable with death. Humane judges would catch at any slip when a life was to be saved. But in this state, where but a single crime is capital and where the whole criminal code is

administered in mildness and mercy, there is no such reason for strictness of pleading. Therefore, it was said by Justice Sergeant, in Sherban v. Com., 8 Watts, 213, that it is sufficient in indictments that the charge be stated with so much certainty that the defendant may know what he is called on to answer and that the court may know how to render the proper judgment thereon. Over-nice exceptions, he says, are not to be encouraged, especially in cases which do not touch the life of the defendant."

Section 21 of the Criminal Procedure Code of March 31, 1860, P. L. 427, provides:

"In every indictment for wilful and corrupt perjury it shall be sufficient to set forth the substance of the offense charged, and in what court, or before whom the oath or affirmation was taken, averring such court, or person, or body to have competent authority to administer the same, together with the proper averment, to falsify the matter wherein the perjury is assigned, without setting forth the information, indictment, declaration or part of any record or proceeding, other than aforesaid, and without setting forth the commission or authority of the court, or person, or body before whom the perjury was committed."

In Com. v. Romesburg, 91 Pa. Superior Ct. 559, 562, which carries the language of Com. v. Keenan, supra, down to date, it is said:

"Every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of assembly prohibiting it. The trend of the decisions of our Supreme Court has been toward sustaining an indictment as good in substance, if the charge be stated with such certainty that the defendant may know what he is called upon to answer, and the court may know how to render the proper judgment thereon. Over-nice exceptions are not to be encouraged, especially in cases which do not touch the life of the defendant: Com. v. Speiser, 79 Pa. Superior Ct. 469. In passing upon the sufficiency of criminal proceedings, courts look more to substantial justice than to technicalities: Com. v. Keenan, 67 Pa. 203; Phillips v. Com., 44 Pa. 197."

See Com. v. White, 24 Pa. Superior Ct. 178, 180; Com. v. Price, 80 Pa. Superior Ct. 291, 294.

(a) Particularly technical is the reason that the indictment is indefinite because it charges the offense to have been committed "on or about the 27th day of June." Had no day certain been laid, the indictment would have been insufficient (Com. v. Dingman, 26 Pa. Superior Ct. 615, 620; Com. v. Nailor, 29 Pa. Superior Ct. 271, 272; Com. v. Major, 198 Pa. 290, 300); but when the time is laid prior to the finding of the indictment, subsequent to the statute describing the offense and within the period prescribed by the statute of limitations (Com. v. Nailor, supra), any time within that period may be shown on the trial: Com. v. Ryhal, 274 Pa. 401, 409; Com. v. Weiss, 284 Pa. 105, 108. So an offense charged "on or about" a given date is good: 1 Whar. Crim. Prac. (10th ed.), § 1065. A misstatement of the date is a mere formal defect: Com. v. Tassone, 246 Pa. 543, 549. It follows that this objection is unsound.

(b) So the reason this indictment does not charge an offense with sufficient particularity is also unsound. The indictment recites the time, the tribunal, the official administering the oath, and the materiality of the testimony. It is contended that because there is no specific allegation that the testimony was false the indictment is bad. The defendant cites Perdue v. Com., 96 Pa. 311, 319, and Com. v. Cauffiel, 84 Pa. Superior Ct. 278, 281, to sustain this contention. In the first case it is said that an indictment for perjury is not good

that "does not contain a solitary averment, intimation or inuendo that any fact set forth in the answer was false or untrue in any particular." In the second case it is stated that the allegation of false swearing "without the further statement that the oath was a false one is bad," and, quoting from Wharton on Criminal Law, it is further said:

"The indictment must proceed by particular averments . . . to negative that which is false, and it is necessary that the indictment should thus expressly contradict the matter falsely sworn to by the defendant."

This is precisely what the indictment in the instant case does. The statute does not say that the indictment must use the word "false" in contradicting the matter falsely sworn to. The statute says that the indictment must contain an averment "to falsify the matter wherein the perjury is assigned." The indictment before us having charged the perjury as consisting in the defendant's falsely swearing that he did not sign the assignment of a life insurance policy continues:

"Whereas, in truth and in fact the said George W. Baltosser then and there well knew that the signature 'George W. Baltosser,' affixed to said instrument aforesaid, being an assignment of a life insurance policy, was genuine and in the own proper handwriting of him the said George W. Baltosser."

Would the indictment have been any stronger or clearer if it had averred that his statement was false instead of averring that he falsely swore that he had not signed the paper and at the time well knew that he had and that the signature was his own proper handwriting?

In Com. v. Rupple, 1 Pa. C. C. Reps. 663, it is said "that the averments as to the truth of the matters denied by the defendant are sufficient." See, also, State v. Brown, 102 N. W. Repr. 799, 128 Iowa, 24; Com. v. Lashley, 74 S. W. Repr. 658, 25 Ky. L. 58; State v. Voorhis, 20 Atl. Repr. 26, 52 N. J. L. J. 351.

(c) Great stress is laid upon the fact that the indictment charges that the defendant did falsely swear "in substance and to the effect following, that is to say," etc. What follows charges with particularity that the defendant said that the signature to the written instrument specifically described "was not the genuine signature of him, the said George W. Baltosser." It is strenuously contended that the words "in substance" and "to the effect" charge a conclusion and not merely the substance of the alleged perjury. The statute provides that in the indictment "it shall be sufficient to set forth the substance of the offense charged." Substance is "that which is essential; it is used in opposition to form:" Bouvier's Law Dictionary. "The essential part of anything said or written put into a brief condensed statement:" Standard Dictionary.

In Com. v. De Cost, 35 Pa. Superior Ct. 88, 92, 93, it is said:

"It is to be borne in mind that it is not absolutely essential in an indictment for perjury to set out the precise words of the testimony alleged to be false; it is sufficient to set forth its substance and effect, taking care, however, that the meaning of the matter set forth is clearly apparent."

There is no ambiguity in this indictment. All the essentials of the offense required by the statute are contained in it: Com. v. B. & O. R. R. Co., 35 Pa. Superior Ct. 474, 477. Moreover, if the defendant was entitled to any further information it could have been secured by a bill of particulars: Com. v. Price, 80 Pa. Superior Ct. 291, 294; Com. v. Powell, 23 Pa. Superior Ct. 370, 373; Com. v. Buccieri, 153 Pa. 535, 547; Com. v. New Beth. Borough, 15 Pa. Superior Ct. 158, 164.

For these reasons we see no merit in the motion in arrest of judgment.

*Motion for a new trial.*

This motion was based upon the following reasons:

1. The court erred in refusing to admit the whole record of the case in which the alleged perjury was committed because otherwise the jury could not determine the substance and effect of the defendant's testimony, and the defendant was deprived of the benefit of any statement he might have made which would have qualified or explained the testimony admitted by the court.

2. The court qualified certain of the defendant's points.

3. There was no motive shown, and, therefore, binding instructions should have been given.

4. The testimony of the defendant was too doubtful and equivocal to constitute perjury.

We will consider these reasons in their order.

1. The defendant offered the whole record of case No. 152, September Sessions, 1924, in which it was alleged he committed perjury, without pointing to any part of it that would explain the defendant's answers. He then confined his offer to his own testimony, again without pointing out any part of that testimony which referred especially to the transaction involved in this prosecution or which would throw any light on the testimony that had already been admitted in evidence. The court then said (Notes of Testimony, page 278): "We will admit all of the testimony of George W. Baltosser in the former trial which has any reference whatever or throws any light upon the issues now being tried." An extensive colloquy then took place, found on pages 272-278 of the testimony. The court then asked counsel for defendant to pick out, for the benefit of the jury, any portions of the record that had any bearing on the issue, which counsel for the Commonwealth agreed should be admitted. Counsel for the defendant replied: "My intention is not to read it to the jury but to select what I want to argue to the jury." The court thereupon pointed out that if the whole record was admitted counsel might select some part upon which to base an argument which ought not to have been received in evidence. This reference to the record illustrates the inadmissibility of the testimony of Baltosser as a whole. Counsel for the defendant now contends that because the defendant had to meet the substance and effect of the alleged perjured testimony, he had a right to sweep the whole record in search for matter to rebut the charge, and, therefore, the entire volume of his testimony was admissible. He could have engaged in that sweeping process before the record was offered as well as after. It was available to him.

It is never necessary in any criminal case for the prosecution to put in the whole of the defendant's evidence: 2 Whar. Crim. Law (11th ed.), § 1570. Where one party puts in evidence an utterance of an opponent, the remainder of the utterance may be put in subject to the following qualifications: "*(a)* No utterance irrelevant to the issue is receivable; *(b)* no more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, is receivable; *(c)* the remainder thus received necessarily aids in the construction of the utterance as a whole and is not in itself testimony:" 4 Wigmore on Evidence (2nd ed.), § 2113, and notes. So, in a trial for perjury it is not necessary to give the whole testimony of the defendant, but only so much as relates to the fact upon which the perjury is assigned: 30 Cyc., "Perjury," 1451; 2 Whar. Crim. Law (11th ed.), page 1729; 3 Greenleaf on Evidence (Lewis ed.), page 232.

In Com. *v.* House, 6 Pa. Superior Ct. 92, 104, it is said by Rice, P. J.:

"Nor, where the Commonwealth desires simply to prove certain admissions of a defendant made upon a former trial, is it necessary to put in evidence

his whole testimony; but if anything is omitted which may tend to explain or qualify those admissions, the defendant may call it out upon cross-examination."

In Com. *v.* Shooshanian, 210 Mass. 123, 96 N. E. Repr. 70, it is held that it is proper for the court to reject evidence offered as a whole, where part of it is admissible. While the early English cases held that the whole of a defendant's testimony on the former trial should be proven (Rex *v.* Jones, Peake N. P., ed. 1795, 37), it now seems to be generally held necessary to prove only so much of the testimony as relates to the particular fact on which the perjury is assigned, allowing to the defendant proof of other parts of the testimony in which his statements are explained or qualified: United States *v.* Erskine, 4 Cranch. C. Ct. 299, 25 Fed. Cas., No. 15057; Dodge *v.* State, 24 N. J. L. 455; Warren *v.* Nichols, 6 Met. (Mass.), 261, 267; Hutcherson *v.* State, 33 Tex. Crim. 67, 24 S. W. Repr. 908; Beach *v.* State, 32 Tex. Crim. 240, 22 S. W. Repr. 976; Taylor *v.* State, 48 Ala. 157.

2. It is contended that the court erred in qualifying defendant's first, second, third, fourth, fifth and seventh points. These points asked us to say that if the defendant believed the signature denied was forged, or if he qualified his answers because that was his belief at the time, the defendant could not be convicted, particularly if his belief was based upon what appeared to him to be probable cause. These points were all qualified so as to charge the jury that if his belief, or what he regarded as probable cause, was based upon reasonable grounds, he could not be convicted. It is only necessary to refer to Com. *v.* Shields, 50 Pa. Superior Ct. 1, 15, to justify the answers to the points. In that case it is said:

"But it is going too far to say that his mere belief of the correctness of his account, no matter how unfounded or how recklessly formed, will excuse him from the consequences of wilfully swearing falsely. In the case of such an oath, taken under such circumstances as we have alluded to, it was proper and not irrelevant, under the evidence adduced at the trial, to qualify the point by calling the jury's attention to the principle enunciated and applied in Com. *v.* Cornish, 6 Binn. 249, that a person swearing wilfully and deliberately to a thing which he rashly believes, but has no probable cause for believing, and which is in fact false, may be guilty of perjury. In no later Pennsylvania decision of authority that has come to our notice has this principle been disputed, and in at least two cases it was distinctly recognized by the Supreme Court: Steinman *v.* McWilliams, 6 Pa. 170, 178; Brooks *v.* Olmstead, 17 Pa. 24, 29. See, also, 3 Greenleaf's Ev. (15th ed.), § 200."

The fifth point was qualified by making it stronger for the defendant, and, therefore, the defendant cannot complain.

3. It is contended that the court should have given binding instructions because no corrupt motive was shown. The defendant Baltosser had charged Luther G. Smith with forgery and with uttering a forged instrument. The defendant Smith, in his trials, offered what were presumed to be admittedly genuine signatures of Baltosser as standards, for the purpose of showing that Baltosser signed the note that he charged Smith with forging. Baltosser in ae least nine cases either denied or refused to admit his signature in the writings supposed to be standards. If the writings could not be established as standards, they were useless for comparison. So Baltosser was tried on the indictment now being considered, as well as eight others, for perjury in connection with the testimony as to those supposed standards. It needs no further discussion to show that there may have been a motive for the jury to

consider. If Baltosser by his testimony could destroy the writings as standards, they would be useless for comparison, and, therefore, Smith's testimony that Baltosser signed the note might be unsupported.

4. It is contended that the defendant's testimony with reference to the writing was hesitating, doubtful and equivocal; not sufficiently absolute or positive upon which an action of perjury could be based, and that the court erred in submitting the case to the jury. The perjury charged is a denial of defendant's signature to the assignment of policy No. 7589746 of the New York Life Insurance Company to the Brotherhood Relief and Compensation Fund as collateral security for the loan obtained by defendant from the latter organization. This assignment is Commonwealth's Exhibit No. 9 in this case and defendant's Exhibit No. 3 in the case in which the alleged perjury was committed. There was also an assignment of a policy, on a somewhat different form, made for the same purpose, involved in case No. 126, January Sessions, 1928, in which the defendant was also convicted of perjury. The cases were tried together. That assignment is Commonwealth's Exhibit No. 10 in the present record and defendant's Exhibit No. 4 in the case in which the alleged perjury was committed. The assignment involved in the instant case purports to be acknowledged before George D. Herbert, alderman, who testified (Notes of Testimony, pages 143, 144) that Baltosser came to his office, Aug. 13, 1921, for the purpose of acknowledging this assignment with the paper already signed; that the alderman said: "Is that your signature?" to which Baltosser replied, "It is," and "then he was sworn and the paper was acknowledged."

Clarence E. McCaslin, agent for the New York Life Insurance Company, testified (Notes of Testimony, page 352) that there were no forms used by that company other than the two forms, Exhibits 9 and 10, and that there was a duplicate of each signed, four in all. The record of the trial in which the perjury is alleged shows (Notes of Testimony, page 91, of the instant case) that Baltosser was shown the assignment of policy No. 7589746 and asked whether that was his signature. He replied: "Well, I assigned the one New York Life transfer; that is not the number. The number is 8193991. . . . I will say that I didn't sign that particular one. . . . Well, it looks like as if it was my signature, but I didn't put it there; I have no recollection of signing it." (Notes of Testimony, page 91.) "I told you there was an assignment made and I carried it with me, but not on that kind of a form; I don't believe so; I can't go back that far and give you the correct answer. . . ." (Notes of Testimony, page 100) : "The form which I signed in the office has not been shown to me here that I signed for the transfer. . . ." (Notes of Testimony, page 102) : When the same assignment was called to his attention (Notes of Testimony, page 198), he said: "I transferred the policy, the first policy, in 1921, prior to July 29th, . . . for the protection of the loan that was gotten from the Brotherhood Relief and Compensation Fund," and when asked whether he recognized the paper, said (Notes of Testimony, page 199) : "No, it don't look like the form that I signed," and (Notes of Testimony, page 234) : "I only signed one form for each policy. . . . I signed a form for the transfer of 75586746; that is the first policy I signed a form; I transferred them all right; I am not denying that at all, but I am denying this kind of a form." When asked concerning the assignment of policy No. 8193991, Exhibit No. 10, he said (Notes of Testimony, page 97) : "I have not any recollection of signing that piece of paper. . . . I will not say that that is the piece of paper; I made an assignment, but I won't say that is the piece of paper." And when asked (Notes of Testimony, page 306) with reference to the assignment taken

before Alderman Landis, he said: "That is the only one I transferred; that is the only one."

These excerpts show that some of the defendant's testimony was equivocal, some of it positive. He gave as his reason for not being positive that there were several persons in the office of the Brotherhood Relief and Compensation Fund who could imitate his signature so that he himself could not tell whether he had made it. The court submitted to the jury to determine whether, in view of all the testimony, these statements were positive denials of his signature to the paper in question. We are convinced this was not error.

Blackstone says that it is perjury where one swears wilfully, absolutely and falsely. There have been many decisions construing what comes within that definition. Where one swears to a fact which he knows is not true, it is, of course, perjury, but the offense is also made out where he swears positively to a fact of which he has no knowledge: Com. v. Miles, 140 Ky. 577, 579, 131 S. W. Repr. 385; People v. McKinney (N. Y.), 3 Park Crim. Rep. 510; State v. Gates, 17 N. H. 373; State v. Knox, 61 N. C. 312. It is also perjury where one swears to a belief which the witness knows does not exist: People v. Phillips, 205 Pac. Repr. 40, 56 Calif. App. 291; Byrnes v. Byrnes, 5 N. E. Repr. 776, 102 N. Y. 4.

The defendant says some of his statements were not absolute, because he did not remember whether he signed the particular form. It has been held to be perjury where one swears that he does not remember certain material facts when in truth they are within his knowledge and recollection: People v. Doody, 172 N. Y. 165, 64 N. E. Repr. 807, 808; People v. Redmond, 178 N. Y. Supp. 120, 124.

Whatever may be the law in other jurisdictions, it is settled in Pennsylvania that one may be guilty of perjury who swears rashly in a matter of which he will not take the pains to inform himself and of which he has no probable cause for belief, although the facts may turn out to be true: Com. v. Cornish, 6 Binn. 249. In the case just cited Brackenridge, J., said: "It is the same thing to me, whether it was his weakness or actual malice and wickedness, that led him to take the oath. It interests the public that rash and unadvised swearing a crime upon another should be restrained." While the case just cited has been criticised in United States v. Shellmire, 27 Fed. Cas., Case No. 16271, yet it has been followed in Steinman v. McWilliams, 6 Pa. 170, 178; Brooks v. Olmstead, 17 Pa. 24, 29; Page v. Allen, 58 Pa. 338, 352, and in Com. v. Shields, 50 Pa. Superior Ct. 1, 15.

In view of these authorities, we are convinced that the question as to whether or not the defendant swore wilfully, absolutely and falsely was one for the jury to determine. The papers upon which the perjury is based were not sprung upon the defendant. He had them presented to him in a trial in this court held a year and a half before the trial in which the perjury is charged. He had every opportunity for careful consideration and examination. The alderman swore that he said he had signed the paper before his acknowledgment was taken, and the acknowledgment and the alderman's signature appeared on the face of the paper. He denied his signature because, he said, it was not in the form which he had signed (and this was true as to the form of both assignments), but the agent of the insurance company said there were no other forms of assignments used by the New York Life Insurance Company. He gave as a reason for his refusal to positively identify his signature that there were persons in the office of the Brotherhood Relief and Compensation Fund who imitate it, but he did not stop with the statement that he did not remember whether he had signed the paper in question. He

positively stated that "this is not the number; the number is 8193991; I will say that I did not sign that particular one; it looks as if it was my signature, but I did not put it there." Under all the testimony, the court could not say as a matter of law that his statements were not absolute or that they were so equivocal as not to amount to perjury. In our opinion, the question was clearly one for the jury. Perjury must be made out by the testimony of two witnesses or one witness and corroborating circumstances: Com. *v.* Bobanic, 62 Pa. Superior Ct. 40. In this case there is the testimony of two witnesses and corroborating circumstances.

For the reasons heretofore given, the motion in arrest of judgment and the motion for a new trial must be overruled.

Now, March 26, 1930, the motion in arrest of judgment and the motion for a new trial are each hereby overruled and the district attorney is directed to move for judgment on the verdict.

From Homer L. Kreider, Harrisburg, Pa.